**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

WILMINGTON TRUST, N.A.,
as Securities Intermediary,

      Plaintiff,

v.                                                     Case 1:21-cv-01540-PKC-VMS

HERMAN SEGAL,

      Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION FOR DEFAULT JUDGMENT</u>**

Plaintiff, Wilmington Trust, N.A., as Securities Intermediary[1] ("Securities Intermediary") submits this memorandum in support of its motion, made pursuant to Federal Rule of Civil Procedure 55(b)(2), for entry of a default judgment against Defendant Herman Segal ("Defendant").

## INTRODUCTION

Securities Intermediary is the beneficiary of two life insurance policies -- together, worth $19 million -- insuring the life of Lilly Segal. Securities Intermediary acquired these policies on the life settlement market years after the policies were issued.

Lilly Segal died in 2018. Securities Intermediary is therefore entitled to receive the $19 million value of the two polices referenced. However, as discussed in more detail below, Lilly Segal's son, Defendant Herman Segal, has intentionally obfuscated the fact of his mother's death to prevent Securities Intermediary (and, on information and belief, other similarly situated beneficiaries) from recovering on the policies it owns.

For example, a year before Lilly Segal passed away, she (purportedly) applied for a name change in New Jersey Superior Court, changing her name to Sprinta Berger (the name of Lilly Segal's mother). It was under this name that Herman Segal (using the name "Herschel" Segal) had his mother buried in 2018, in a grave that remains unmarked, and from which the cemetery's generic marker has been removed.

When Lilly Segal passed away, Herman Segal also had the death certificate for his mother issued under the name Sprinta Berger, and intentionally used an incorrect social security number and birthdate on the death certificate.

---

[1] At all times, Wilmington Trust acts solely as the Securities Intermediary for the benefit of Geronta Funding, a Delaware statutory Trust, and does not act in its individual capacity. *See, e.g.,* N.Y. U.C.C. § 8-102(a)(14)(ii).

As the evidence makes clear, Mr. Segal intentionally interfered with Securities Intermediary's efforts to collect the death benefits from the life insurance policies it owns. In fact, the evidence shows that Herman Segal did this in order to benefit financially from his mother's death. In particular, following her death, he solicited monetary payments for information from the owners of life insurance policies on his mother's life, in exchange for promises of information regarding his mother's passing and the death certificate.

Accordingly, Securities Intermediary was forced to file the present lawsuit.

Despite having been served and being on actual notice of this action, Mr. Segal has not appeared or filed an answer to the Complaint. As demonstrated by this motion and the attached evidence, Securities Intermediary is entitled to entry of a default judgment against Mr. Segal on each of the claims raised in its Complaint, which seek a declaratory judgment that Lilly Segal is deceased and damages for Herman Segal's tortious interference with Securities Intermediary's contractual rights.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure ("Rule 55") provides for entry of a judgment by default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ.P. 55(a). Rule 55 sets forth a two-step process that the Court must follow before it may enter a default judgment against a defendant. *See Robertson v. Doe*, No. 05 Civ. 7046(LAP), 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008); *Fashiontv.com GMBH v. Hew*, No. 06 cv 3200(GBD), 2007 WL 2363694, *1–2 (S.D.N.Y. Aug. 17, 2007). First, Rule 55(a) provides that when a party fails to plead or otherwise defend an action, the Clerk of the Court must enter the party's default. *See* Fed. R. Civ. P. 55(a). Second, pursuant to Rule 55(b)(2), the moving party is required to present its application for entry

#155253592_v1

of judgment to the court. *See id*. In deciding a motion for default judgment, a court should see that the plaintiff "took all required procedural steps in moving for default judgment pursuant to Local Civ. R. 55.2(c)" and that plaintiff's "allegations, when accepted as true, establish liability as a matter of law." *SAC Fund II 0826, LLC v. Burnell's Enters., Inc.*, 18 Civ. 3504 (ENV) (PK), 2019 WL 5694078, at *4 (E.D.N.Y. Sept. 7, 2019), *R&R adopted*, 2019 WL 5956526 (E.D.N.Y. Nov. 13, 2019) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

## FACTUAL BACKGROUND

### A. The Policies

Securities Intermediary is the owner and beneficiary of two life insurance policies issued by John Hancock Life Insurance Company: Policy No. 93973600 ("Policy 1," see **ECF No. 13-1**[2], ) and Policy No. 93972826 ("Policy 2," see **ECF No. 13-2**), both of which were issued on March 5, 2008 (collectively, the "Policies") with a face amount of $9,500,000 each. *See* **ECF No. 1**, Complaint, ¶ 8. Defendant Herman Segal ("Defendant") is the son of Lilly Segal. *See* Compl. ¶ 2.

At the time the Policies were issued and until their initial purchase by a third party in March 2012, the beneficiary of Policy 1 was The Lilly Segal Family Trust #1 dated January 18, 2008 and the beneficiary of Policy 2 was The Lilly Segal Family Trust #2 dated January 18, 2008 (collectively, the "Trusts"). Compl. ¶ 14; **ECF No. 13-3,** March 23, 2012 Letter Agreement on Segal Family Trusts. Defendant was a beneficiary of the Trusts during the time period that the Policies were owned by the Trusts. Compl. ¶ 15; **ECF No. 13-3,** March 23, 2012 Letter Agreement

---

[2] All exhibits (except Composite Exhibit A attached hereto containing the certificate of default records) have been filed on the docket as attachments to the Declaration of Katherine Skeele, **ECF No. 13**. For the Court's ease of reference, the ECF Number and exhibit description for each exhibit will be listed hereinafter.

4

on Segal Family Trusts . On March 26, 2012, Defendant, in connection with a sale of the Policies and in his capacity as beneficiary of the Trusts, signed a document acknowledging that the Trusts and the beneficiaries of the Trusts had agreed to sell the Policies to a third party (EEA Life Settlements), and that the Trusts (and beneficiaries) would have no further interest in the Policies. Compl. ¶ 17; **ECF No. 13-4,** March 26, 2012 Acknowledgment and Consent of Issue.

Securities Intermediary acquired the Policies from EEA Life Settlements on August 4, 2016 (over 8 years after their issuance), and became the owner and beneficiary of the Policies. Compl. ¶ 8; **ECF No. 13-5,** August 04, 2016 Assignment and Assumption Agreement. Pursuant to the terms of Policy 1, Securities Intermediary is entitled to a death benefit payment of $9,500,000 for Policy 1 upon the death of Mrs. Segal. Compl. ¶ 10; **ECF No. 13-1,** Policy 1. Likewise, pursuant to the terms of Policy 2, Securities Intermediary is entitled to a death benefit payment of $9,500,000 for Policy 2 upon the death of Mrs. Segal. Compl. ¶ 11; **ECF No. 13-2,** Policy 2. Under the Policies, the death benefits will be paid to Securities Intermediary as the beneficiary of the Policies upon submission of proof of death of the insured, Mrs. Segal.

   **B.**   **Mrs. Segal's Death and Defendant's Actions to Conceal her Death**

Lilly Segal passed away at 12:05 am on November 7, 2018, at her son, Defendant Herman Segal's home. **ECF No. 13-6,** Death Certificate; **ECF No. 13-7,** Declaration of James Donofrio (Director of Jewish Funeral Services of Brooklyn) ("Donofrio Decl."). Mrs. Segal's death certificate lists her place of birth (Czechoslovakia), her former address in Somerset, New Jersey, as well as her mother and father's names (Shrpintza Berger and Tzvi Berkovitcz). *See* **ECF No. 13-6**, Death Certificate. The physician who certified the death, Eli Inzlicht-Sprei, was Lily Segal's physician. *See id.*; *see* **ECF No. 13-8,** Declaration of Dr. Eli Inzlicht-Sprei ("Sprei Decl.") at ¶ 3; **ECF No. 13-9**, Physician Documents Submitted to Insurance Company. Indeed, Dr. Izlicht-Sprei

5

has issued a sworn affidavit under oath confirming that he has been Lilly Segal's treating physician since 2009, that he was called by Herman Segal (who he states also goes by Herschel) to come to Mr. Segal's home on November 7, 2018 to attend to Lilly Segal, that when he arrived, he confirmed that Lilly Segal was deceased.  *See* **ECF No. 13-8,** Sprei Decl. at ¶¶ 3-4.

The death certificate, however, was issued in the name of "Sprinta Berger."  This is because prior to Mrs. Segal's death, she (purportedly) submitted a name change form to the Superior Court of New Jersey to change her name to Sprinta Berger.  **ECF No. 13-10**, New Jersey Court Records for Legal Name Change.  The form submitted to the Court lists her name as Lilly Segal, born January 14, 1924 in Czech Republic, daughter of Sprinta Berger and Hershel Berkovits (apparent aliases of Shrpintza Berger and Tzvi Berkovitcz listed on the death certificate).  *Id.*  The form lists aliases of Lilly Segal as: Lenka, Leah, Lily Berkovitz, and Lilly Segal.  *Id.*  Tellingly, Lenka Segal is the name on Mrs. Segal's Naturalization Certificate. **ECF No. 13-11,** Lily Segal's Naturalization Certificate**.**[3]  Even though the form purports to have been submitted by Lilly Segal, the phone number provided is that of Herman Segal, and the false birthdate and social security number utilized on the form are the same false numbers provided by Herman when submitting her information to the funeral home following her death.  *See* **ECF No. 13-10**, New Jersey Court Records for Legal Name Change*.*

Although the birthdate listed on the name-change form is incorrect, it is clear from the address and other information provided on the form that the Lilly Segal who changed her name to Sprinta Berger is in fact the insured under the Policies.  The phone number listed on the form is Herman (a/k/a Herschel) Segal's phone number. *See id.*; *see also* **ECF No. 13-7,** Donofrio Decl. 4**.** The form also represents that the name change was submitted because Mrs. Segal sought to

---

[3] The Naturalization Certificate lists Mrs. Segal's correct birthdate — March 26, 1926.

6

assume her mother's name to honor her memory. *See* **ECF No. 13-10**, New Jersey Court Records for Legal Name Change. The death certificate for Sprinta Berger (aka Lilly Segal) notes that her mother's name was Shprintza Berger. **ECF No. 13-6,** Death Certificate. On April 25, 2017, Judge Kevin M. Shanahan of the Superior Court of New Jersey ordered the name change applied for, and Lilly Segal legally became Sprinta Berger. **ECF No. 13-12,** Superior Court of New Jersey Order on Legal Name Change.

Accordingly, the death certificate for Lilly Segal (the insured) was issued in the name of Sprinta Berger. Indeed, Dr. Inzlicht-Sprei confirmed in his sworn affidavit that he issued the death certificate in the name of Sprinta Berger because Herman Segal advised the doctor that Lilly Segal had legally changed her name to Sprinta Berger. *See* **ECF No. 13-8**, Sprei Decl. at ¶ 5. Notably, the death certificate lists the same incorrect social security number for Lilly Segal a/k/a Sprinta Berger that was used on the name change form. In particular, it includes a social security number that is registered to an individual who is *not* deceased, but is currently living in Florida. *See* **ECF No. 13-13,** Acquaviva Report. The false social security number provided for Lilly Segal a/k/a Sprinta Berger is nearly the same as Lilly Segal's actual social security number (the number she used when applying for the Policies), with only two numbers changed. *Compare* **ECF No. 13-6,** Death Certificate *with* **ECF No. 13-14,** Lily Segal's Social Security Card.[4] This slightly modified social security number was provided to Jewish Funeral Services of Brooklyn by "Herschel Siegal," who the funeral home lists as the "son" of the deceased. *See* **ECF 13-7,** Donofrio Decl. 4.. The address provided for Herschel is the residence formerly owned by Herman Segal (Mrs. Segal's

---

[4] In particular, Lilly Segal's actual social security number (with all numbers that were unchanged by Herman Segal redacted for purpose of public filing) is XXX-X4-XXX2. The social security number provided by Herman Segal on Lilly's Segal's death certificate (with all numbers that were unchanged redacted for purpose of public filing is XXX-X6-XXX3).

7

actual son). *Id.*; *see also* **ECF No. 13-15,** Herman Segal's Driver's License; **ECF No. 13-16,** Quentin Road Property Transfer. As noted above, the phone number matches the phone number on Mrs. Segal's legal name-change application. And the funeral home expenses associated with the transfer and burial of Lilly Segal's remains were paid by check from an estate for which Herman Segal is the executor - as is evident on the face of that check itself:



**ECF No. 13-7,** Donofrio Decl. p.1 ¶ 8; p. 9.

Both the death certificate and the burial receipt, signed by the funeral director, confirm that Sprinta Berger a/k/a Lilly Segal's body was transferred to Beth David Cemetery in Elmont, New York. **ECF No. 13-6,** Death Certificate; **ECF No. 13-7,** Donofrio Decl. 5. In fact, James Donofrio, the Director of Jewish Funeral Services of Brooklyn confirmed in a sworn affidavit that he went in person to Herman Segal's residence (located at 4115 Quentin Road, Brooklyn, New York) to retrieve Herman's mother's body after Herman Segal called an employee of the funeral home. *See* **ECF No. 13-7** Donofrio Decl. p.1 at ¶¶ 3– 4. He also confirmed that the body was transferred by the funeral home to Beth David Cemetery, and that Jewish Funeral Services of Brooklyn coordinated the interment of the body Burial Grounds of Yeshiva Rabbi Chaim Berlin, Map 1228, Section 1, Block 5, Row D, Grave # 10 in Beth David Cemetery. *Id.* at ¶¶ 6-7. The burial site is also confirmed by the Vice President of Beth David Cemetery. *See* **ECF No. 13-17,** Declaration

8

of Richard J. Damm Jr. (Vice President of Beth David Cemetery). No gravestone, however, has been raised at Sprinta Berger a/k/a Lilly Segal's grave site. *See id.* ¶ 6 And the tag that was affixed by the cemetery to the plastic marker for the grave has been removed. *See id.* 4–7. Although her grave is not marked, the Vice President of the cemetery confirms that the grave immediately beside hers is inscribed with her husband's name (translated from Hebrew, and thus phonetically spelled): Szmul David Ben Y'Israel Halevy Segal (Samuel David son of Israel Halevy Segal). *See id.* at ¶ 4. The grave immediately beside Szmul Segal's is inscribed with their son's name (translated from Hebrew, and thus phonetically spelled): Y'Israel Ben Shmuel David Segal Halevy (Israel son of Samuel David Segal Halevy). *See id.*

Notably, all of the actions taken by Herman Segal in an effort to conceal proof of his mother's death were taken intentionally by Herman because he wanted to financially profit from her death. In particular, following her death, Herman Segal was approaching owners of policies on the life of his mother and offering to provide information regarding her death and death certificate in exchange for a substantial cash payment.[5]  Compl. ¶¶ 22–23.

### C. John Hancock Life Insurance Company's Failure to Pay the Claims on the Policies

Upon learning of the passing of Lilly Segal, Securities Intermediary submitted a claim to John Hancock Life Insurance Company for payment of the death benefits. *See* **ECF No. 13-18**, Claims Submitted to John Hancock. Under the Policies, John Hancock was required to pay the death benefits to Securities Intermediary upon receipt of the claim and proof of death. *Id.* John Hancock, however, has not paid the death benefits to Securities Intermediary, even when provided

---

[5] Defendant's actions in attempting to conceal his mother's death and financially profit from the same are not surprising given his well-documented history of fraudulent and dishonest conduct outlined in detail in the Complaint. ECF No. 1 ¶¶ 24–31.

9

with Sprinta Berger/Lilly Segal's death certificate, citing the fact that the social security number listed in the death certificate for Sprinta Berger does not match the social security number for Lilly Segal. *See* **ECF No. 13-19,** Communications between Holland & Knight and John Hancock. As a result, Securities Intermediary, on behalf of its customer, has been harmed and unable to receive payment of the death benefits to which it is lawfully entitled.

## PROCEDURAL BACKGROUND

Securities Intermediary filed the Complaint on March 23, 2021 alleging claims for tortious interference and declaratory judgment. **ECF No. 1.** At that time, Securities Intermediary believed, based on available public records information, that Defendant resided at 4115 Quentin Road, Brooklyn, New York with his wife. Securities Intermediary, through a process server, made three attempts at service at that address. Each time, the process server found the property apparently uninhabited, with no vehicle in the driveway, a For Sale sign outside, and its outer gate padlocked. *See* **ECF No. 6-1**. It was later determined that Defendant sold that property, and that his wife and son registered a new address of 1535 East 17th Street, Apt 4R, Brooklyn, New York (although Defendant's registered address remained the 4115 Quentin Road property that was sold). Securities Intermediary, through a process server, made multiple attempts to effect service at the East 17th Street address, and ultimately effected service by affixing the Summons and Complaint to the door and sending it by certified mail to that address. **ECF No. 6, ECF No. 5.** Securities Intermediary's process server noted that the buzzer at 1535 East 17th Street, Apt 4R lists an "H. Segal," and its investigator found no record of Defendant's divorce from Yocheved Segal. *Id.*

In addition to making nail-and-mail service at the East 17th Street address, Securities Intermediary identified counsel for Defendant in a criminal matter pending before this Court, in which Defendant is charged with felony tax evasion. *See* United States v. Herman Segal, E.D.N.Y.

10

#155253592_v1

Case No. 1:20-cr-00551-MKB-1. In correspondence with Defendant's criminal counsel, which took place by telephone and email, Mr. Mahon confirmed that he sent his client the complaint in this action. **ECF No. 6.**

Nevertheless, Defendant never filed an appearance in this action or responded to the Complaint. As a result, a Clerk's Default was entered against Defendant on February 16, 2022. *See* **ECF No. 11**.

## ARGUMENT

**A.  Securities Intermediary has met the procedural requirements for a default judgment.**

**1.  Securities Intermediary has demonstrated proper service of process on Defendant.**

To be entitled to default judgment, plaintiff must demonstrate that "the nonappearing party was effectively served with process." *Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017). "Establishing proper service is . . . integral to determining whether the Court has personal jurisdiction over the defaulting defendant." *Augustin v. Apex Fin. Mgmt.*, No. 14 Civ. 182 (CBA) (VMS), 2015 WL 5657368, at *2 (E.D.N.Y. July 27, 2015), *R&R adopted*, 2015 WL 7430008 (E.D.N.Y. Nov. 23, 2015).

New York courts, in interpreting service requirements under the New York Civil Procedure Law and Rules, are flexible in allowing service to be deemed accomplished when made at a defendant's apparent address, where information as to a defendant's official residence is not readily available. *Bartomeo v. Brookdale Hosp. Medical Center*, 121 A.D.2d 670 (2d Dep't 1986). Furthermore, a marital residence may reasonably be assumed to be the residence of a married defendant, particularly where the married defendant has not taken steps to establish an official record of residence. *CC Home Lenders v. Cioffi*, 294 A.D.2d 325 (2d Dep't 2002).

Here, as discussed above, service was effectuated at the East 17th Street address where

11

Defendant's wife (and son) has established her residence. Notably, Defendant and his wife remain married, and Defendant's first initial ("H. Segal") is displayed at the buzzer of the East 17th Street apartment. **ECF No. 6 & ECF No. 6-1**. Moreover, public records indicate that Defendant has surrendered his prior residence on Quentin Road. *See* **ECF No. 13-16,** Quentin Road Property Transfer. Accordingly, it is clear that Defendant's current abode and residence is 1535 East 17th Street, Apt 4R. In addition to making nail-and-mail service at the East 17th Street address, Securities Intermediary identified counsel for Defendant in a criminal matter pending before this Court, in which Defendant is charged with felony tax evasion. The criminal case is *United States v. Herman Segal*, E.D.N.Y. Case No. 1:20-cr-00551-MKB-1. In correspondence with Defendant's criminal counsel, which took place by telephone and email, Mr. Mahon confirmed that he sent his client the complaint in this action. **ECF No. 6.**

For the foregoing reasons, service of process was properly effectuated upon Defendant and this Court has personal jurisdiction over Defendant to decide this motion for default judgment.

    **2.    Securities Intermediary complied with Local Civil Rule 55.2(b) and (c).**

Local Civil Rule 55.2(b) requires that any party seeking default judgment "shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civ. R. 55.2(b). Local Civil Rule 55.2(c) requires that "all papers submitted to the Court" in support of a motion for default judgment "shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual). Proof of such mailing shall be filed with the Court." Local Civ. R. 55.2(c).

Here, Securities Intermediary complied with the Local Civil Rule 55.2(b) and (c). The

12

#155253592_v1

Certificate of Default, a copy of the complaint, and a proposed form of default judgment are annexed to this motion. *See* **Composite Exhibit A**. All papers in support of Plaintiff's motion for default judgment were simultaneously mailed to Defendant. *See* **ECF No. 13,** Decl. of Katherine Skeele ¶¶ 20, 21.

**B.     Securities Intermediary has met the substantive requirements for default judgment.**

    **1.     The default judgment factors are satisfied**.

When determining whether to enter a default judgment, courts are guided by the same factors that apply to a motion to set aside an entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether a meritorious defense has been presented. *See Swarna v. Al-awadi*, 622 F.3d 123, 142 (2d Cir. 2010). All three factors are satisfied here.

As to the first factor, the record demonstrates that Defendant's default was willful. Courts have found that a defendant's failure to appear or respond constitutes a willful default. *See, e.g., S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (holding that defendant's non-appearance and failure to respond equated to willful conduct). Here, despite being properly served with process and Defendant's counsel's representation that Defendant received a copy of the Complaint, Defendant has not answered, responded in any way to the complaint, or attempted to defend this litigation. Defendant's failure to appear or respond in this case demonstrates that his default was willful.

The second factor is satisfied because ignoring Defendant's default and denying the motion for default judgment would prejudice Securities Intermediary. Courts have held that denying a motion for default judgment would be prejudicial to the movant if "there are no additional steps

13

available to secure relief in Court." *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17 Civ. 1611 (DRH) (AKT), 2018 WL 1525803, at *9 (E.D.N.Y. Mar. 1, 2018), *R&R adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted). Here, without the entry of default judgment, Securities Intermediary would not be able to recover against Defendant for his tortious conduct and would not be able to obtain the declaratory relief it requires to ensure payment of the death benefits on the Policies. There is no alternate legal redress.

Likewise, the third factor is satisfied because Defendant has failed to demonstrate that he has meritorious defenses. "Where a defendant has not filed an answer, there is no evidence of any defense." *Tenecora v. Ba-Kal Rest. Corp.*, No. 18 Civ. 7311 (DRH) (AKT), 2020 WL 8771256, at *9 (E.D.N.Y. Nov. 30, 2020), *R&R adopted in part*, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021) (citation omitted). Here, despite proper service -- and actual notice, Defendant did not file any answer to the complaint. As such, there is no evidence of any meritorious defense that Defendant may have.

### 2. Securities Intermediary has sufficiently pleaded its claims.

On plaintiff's motion, a court may enter default judgment if liability is established as matter of law when the factual allegations of the complaint are taken as true. *See Tenecora*, 2020 WL 8771256, at *7. A default is a concession of all "well pleaded" factual allegations of liability in the complaint. *Unitrans Consol. Inc. v. Classic Closeouts*, No. 09 Civ. 2098 (SLT) (SGM), 2010 WL 1265206, at *2 (E.D.N.Y. Mar. 31, 2010) ("[T]he well-pleaded factual allegations in the complaint are deemed admitted upon a defendant's default[.]"). The question is, thus, whether the allegations in the complaint, if accepted as true, establish liability for plaintiff's claims. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations

14

establish [the defendant's] liability as a matter of law.") (citation & internal quotation marks omitted). Here, Securities Intermediary has properly alleged facts that, when taken as true, establish each of its claims. Moreover, Securities Intermediary has submitted ample evidence of those allegations to further support the entry of default judgment.

### (a) Securities Intermediary is entitled to a default judgment on its claim for tortious interference.

The elements of tortious interference with a contract under New York law are: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *Kimso Apartments, LLC v. Rivera*, 180 A.D.3d 1033, 1035, 119 N.Y.S.3d 519, 522 (2020).

In the Complaint, Securities Intermediary alleged that it was a party to the Policies, Defendant had knowledge of those contracts, and that Defendant took affirmative actions to conceal the fact of his mother's death from Securities Intermediary in order to ensure that John Hancock Life Insurance Company would not pay death benefits as it was obligated to do under the Policies. *See* Compl. ¶¶ 9, 21–22. The Complaint also explains that Herman Segal took these actions because he wanted to procure a monetary payment for himself in exchange for the provision on the information necessary to file the death claims for the various policies insuring his mother's life. *Id.* ¶23. The totality of such allegations, when taken as true, properly state a claim for tortious interference under New York law and establish Defendant's liability for that tort. Thus, on this basis alone, default judgment should granted on Count I.

In addition, Securities Intermediary has, in part through its investigations relating to this action, procured substantial evidence to support the allegations pleaded in the Complaint. First, Securities Intermediary is a party to two contracts with John Hancock Life Insurance Company

15

#155253592_v1

("John Hancock") (i.e., the Policies). It is clear that Defendant had knowledge of those contracts as he was the former beneficiary of the trusts that owned the Policies, and in that capacity, signed documents to facilitate the sale of the Policies. *See* **ECF 13-3,** March 23, 2012 Letter Agreement on Segal Family Trusts. Defendant indeed took intentional steps to prevent Securities Intermediary from receiving the death benefits under the Policies, including the following:

- Prior to the death of his mother, Herman Segal helped facilitate a name change for his mother in which she would no longer be legally known as Lilly Segal (the name under which all of the life insurance policies on her life were issued).

- In the name change form, Herman Segal provided a false birthdate and social security number for his mother. Specifically, he changed two of the digits in her social security number (assuming the social security number of another individual who is still living) so it would not match the number legally registered to Lilly Segal.

- After Lilly Segal's death, Herman Segal provided the same false information to the funeral home (including the same false social security number–generated by switching out two of the digits in Lilly Segal's social security number), which information was then utilized on the official death certificate. After providing this false information, Herman Segal tried to elicit a monetary payment in exchange for providing information on Lilly Segal's death and information leading to the death certificate that was necessary to submit death claims on her life insurance policies.

As a result of the actions taken by Herman Segal, John Hancock has not complied with its contractual obligations under the Policies by failing to remit the death benefits to Securities Intermediary once the death claim was submitted. Moreover, Defendant's actions make clear that his actions were taken intentionally to prevent Securities Intermediary from being able to locate the death certificate because he wanted to secure a monetary payment for himself in exchange for the information necessary for Hancock to pay the death benefits on the Policies owned by Plaintiff. As a direct result of Defendant's actions, Securities Intermediary, on behalf of its customer, has been damaged in the amount of $19 million in death benefits that have been withheld from it and which it should have received shortly after Lilly Segal (a/k/a Sprinta Berger) passed away on

November 7, 2018.

### (b) Securities Intermediary has established its entitlement to damages.

It is well-established that, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A plaintiff has the burden to establish damages with reasonable certainty by sufficient evidence. *See House v. Kent Worldwide Mach. Works Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010). A hearing on damages is not mandatory. *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Here, as discussed above, the evidence is clear that as a result of Defendant's tortious conduct in concealing his mother's death in order to prevent Securities Intermediary from recovering death benefits under the Policies, Securities Intermediary, on behalf of its customer, has been damaged in an amount of $19 million ($9.5 million death benefits for each Policy that is unable to recover), plus the loss of use of those monies since Lilly Segal's death, which should be accounted for by application of the federal statutory interest rate to the total death benefit from the date of Lilly Segals death.

### (c) Securities Intermediary is entitled to a default judgment on its declaratory judgment claim.

In Count II of its Complaint, Securities Intermediary seeks a declaratory judgment regarding the fact of Lilly Segal's death. Importantly, without such a declaration, Securities Intermediary will be unable to procure payment of the death benefits from John Hancock for the Policies.

"In addition to damages and costs, courts are empowered to grant declaratory relief

following default." *Arch Ins. Co. v. Sky Materials Corp.*, No. 17 CV 2829 (CBA)(LB), 2021 WL 966110, at *7 (E.D.N.Y. Jan. 29, 2021), *R&R adopted*, No. 17CV2829CBALB, 2021 WL 964948 (E.D.N.Y. Mar. 15, 2021) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993) ("A district court has broad discretion to decide whether to render a declaratory judgment.")). Indeed, "[f]ederal courts effectuating default judgments are empowered to take measures to determine damages, to establish the truth of allegations, or to investigate any other matter. *See* Rule 55(b)(2)." *Cont'l Ins. Co. v. Huff Enterprises Inc.*, No. 07-CV-3821 (NGG), 2009 WL 3756630, at *4 (E.D.N.Y. Nov. 6, 2009). "The propriety of granting declaratory relief is a matter within the discretion of the district court." *Id.* ("Were declaratory relief categorically unavailable in default cases, a defending party could prevent a plaintiff from obtaining a declaration simply by not showing up in court.").

As discussed above, and notwithstanding Defendant's affirmative efforts to obscure the same, the evidence demonstrates that Lilly Segal passed away on November 7, 2018, and that she is buried in Beth David Cemetery next to the graves of her husband and deceased son. Securities Intermediary is therefore entitled to a declaratory judgment establishing that:

1. Lilly Segal (Defendant's mother) passed away on November 7, 2018.
2. Lilly Segal was buried under the name Sprinta Berger on November 7, 2018, in Beth David Cemetery.
3. Defendant took deliberate actions to conceal the death of his mother, including by providing false identifying information on both her death certificate and the form he used to facilitate a name change for his mother prior to her death.
4. As a result of Defendant's actions, the identifying information (*i.e.*, the social security number and birthdate) contained on the death certificate of Sprinta Berger

(a/k/a Lilly Segal) is incorrect.

## CONCLUSION

Based on the demand contained in the Complaint, this Memorandum, the Proposed Default Judgment, and the evidence set forth in the accompanying exhibits and declarations (as well as those previously filed), Securities Intermediary respectfully requests that judgment in the form presented herewith be entered by the Court.

Dated: March 1, 2022                                                                      Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Katherine A. Skeele*
Katherine A. Skeele
31 West 52nd Street
New York, New York 10019
Email: katherine.skeele@hklaw.com

And

**Jesus E. Cuza**
Florida Bar No. 428991
(*pro hac vice application to be filed*)
**Rebecca Canamero**
Florida Bar No: 86424
(*pro hac vice application pending*)
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Email: jesus.cuza@hklaw.com
rebecca.canamero@hklaw.com