# COMPOSITE EXHIBIT A

# Certificate of Default

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WILMINGTON TRUST, N.A., as Securities Intermediary,

                    Plaintiff,                        21-cv-01540-PKC-TAM

      -     against  –                   **CERTIFICATE OF DEFAULT**

HERMAN SEGAL,

                    Defendant.
-----------------------------------------------------------X

      I, Brenna B. Mahoney, Clerk of the Court of the United States District Court for the Eastern District of New York, do hereby certify that Defendant Herman Segal has not filed any answer or otherwise moved with respect to the Complaint herein. The default of Defendant Herman Segal is hereby noted pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

BRENNA B. MAHONEY, Clerk of the Court

Dated: Brooklyn, New York
February 16, 2022

By: ___*Jalitza Poveda*___
       Deputy Clerk

# Complaint

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

WILMINGTON TRUST, N.A.,
as Securities Intermediary,

                Plaintiff,

v.

HERMAN SEGAL,

                Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Wilmington Trust, N.A., as Securities Intermediary (in such capacity "Securities Intermediary" or "Plaintiff"),[1] through its undersigned counsel, sues Herman Segal as follows:

### I. THE PARTIES

1. Plaintiff is a national banking association with its principal offices in Wilmington, Delaware. Plaintiff is the owner and beneficiary of two life insurance policies issued by John Hancock Life Insurance Company insuring the life of Lilly Segal.

2. Defendant Herman Segal ("Defendant" or "Herman") is the son of the late Lilly Segal ("Mrs. Segal") and, upon information and belief, Herman is a New York resident.

### II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of

---

[1] At all times, Wilmington Trust, N.A. acts solely as the Securities Intermediary for the benefit of Geronta Funding, a Delaware statutory Trust, and does not act in its individual capacity. *See, e.g.*, N.Y. U.C.C. § 8-102(a)(14)(ii).

costs, interest and attorneys' fees.

4.  This Court has personal jurisdiction over Defendant because he is a citizen and resident of the state of New York.

5.  Venue is also proper under 28 U.S.C. § 1391(b) because Defendant resides in this judicial district and the conduct at issue in this action took place, at least in part, in this district.

### III. FACTUAL BACKGROUND

6.  This case arises from Defendant's intentional efforts to interfere with Securities Intermediary's contractual rights under two life insurance policies insuring the life of Defendant's mother.

7.  In particular, as explained in more detail below, Defendant—who has a well-documented history of dishonesty and concealment in multiple facets of his life—took *affirmative* steps to conceal the death of his mother with the sole purpose of depriving Plaintiff of the death benefits it is rightfully owed under those life insurance policies in order to put him in a position to demand money from Plaintiff.

    **A.  The Life Insurance Policies Insuring the Life of Lilly Segal**

8.  This action involves two life insurance policies issued by John Hancock Life Insurance Company insuring the life of Mrs. Segal, Policy No. 9397600 ("Policy 1," *see* Exhibit A) and Policy No. 93972826 ("Policy 2," *see* Exhibit B), both of which were issued on March 5, 2008 (collectively, the "Policies") with a face amount of $9,500,000 each.

9.  Plaintiff, as Securities Intermediary for Geronta Funding, acquired the Policies on August 4, 2016, and became the owner and beneficiary of the Policies.

10. Pursuant to the terms of Policy 1, Securities Intermediary is entitled to a death benefit payment of $9,500,000 for Policy 1 upon the death of Mrs. Segal.

2

11. Pursuant to terms of Policy 2, Securities Intermediary is entitled to a death benefit payment of $9,500,000 for Policy 2 upon the death of Mrs. Segal.

12. Under the Policies, the death benefits will be paid to Securities Intermediary as the beneficiary of the Policies upon submission of proof of death of the insured, Mrs. Segal.

13. On March 26, 2012, Mrs. Segal executed a Death Certificate Authorization Agreement directing her personal representative, family members or any other person with responsibility for her affairs at the time of her death to obtain and provide an original death certificates and/or any other document(s) necessary to process a claim for the death benefit owed under the Policies. *See* Exhibit C.

**B.   Herman Segal's Knowledge and Involvement with the Policies**

14. At the time the Policies were issued and until their initial purchase by a third party in March 2012, the beneficiary of Policy 1 was The Lilly Segal Family Trust #1 dated January 18, 2008 and the beneficiary of Policy 2 was The Lilly Segal Family Trust #2 dated January 18, 2008 (collectively, the "Trusts").

15. Defendant was a beneficiary of the Trusts during the time period that the Policies were owned by the Trusts.

16. Defendant was aware of the existence of the Policies and the terms contained therein.

17. On March 26, 2012, Defendant, in connection with a sale of the Policies and in his capacity as beneficiary of the Trusts, signed a document acknowledging that the Trusts and the beneficiaries of the Trusts had agreed to sell the beneficial interest in the Policies to a third party and that the Trusts (and beneficiaries) would have no further interest in the Policies. *See* Exhibit D.

3

18. Defendant has known that Plaintiff is the current owner and beneficiary of the Policies, entitled to receive the death benefits under the Policies upon Mrs. Segal's death.

**C.  Herman Segal's Deliberate Efforts to Conceal his Mother's Death in Order to Prevent Plaintiff from Recovering the Death Benefits Due under the Policies.**

19. Upon information and belief, Mrs. Segal passed away on or around June 15, 2019.[2]

20. Notwithstanding the express instruction from Mrs. Segal that her death certificate be provided to the current owner of the Policies at the time of her death in order to facilitate payment of the death benefits, Defendant took *deliberate and affirmative actions* to conceal Mrs. Segal's death.

21. In particular, Defendant—the only surviving child of Mrs. Segal—took steps to conceal Mrs. Segal's death from public record, including by choosing not to report her death to the appropriate health authorities in the State of New York or elsewhere and/or reporting her death using a fictitious name and identifying information.

22. Defendant took these actions in order to interfere with Plaintiff's rights under the Policies and prevent payment of the death benefits.

23. Defendant's efforts were calculated to put him in a position where he could demand hundreds of thousands of dollars from Plaintiff, if not more, in exchange for his providing information that Plaintiff needs in order to establish proof of death under the Policies.

**D.  Herman Segal's History of Dishonesty**

24. Defendant's actions in attempting to conceal his mother's death are not surprising given his well-documented history of fraudulent and dishonest conduct.

---

[2] Mrs. Segal was born on March 26, 1926. Thus, if she were alive today, she would be 94 years old.

4

25.     For example, on July 9, 2015, Defendant executed a sworn affidavit, which was filed with the Supreme Court of the State of New York, Kings County, wherein Defendant admitted that he took out a loan on his mother's home, by defrauding Mrs. Segal into signing a loan document to mortgage her home without her knowledge.  Exhibit E.

26.     In the affidavit, Defendant further acknowledged that when the lender was attempting to foreclose on the fraudulent loan, Defendant forged Mrs. Segal's signature on an affidavit to be filed with the Court.  *See* Exhibit E.  Defendant noted that at time of these actions, in 2015, his mother, Mrs. Segal, was already in poor health and had required a 24 hour/day home health attendant since 2009.

27.     In the same affidavit, Defendant admitted that he also forged his wife's signature in order to notarize the fraudulent affidavit.  *Id.*

28.     In addition, in an order issued in a bankruptcy proceeding filed on behalf of Defendant—which Defendant later sought to have dismissed after admitting it was only filed to halt a foreclosure sale—a judge from the United States Bankruptcy Court for the Eastern District of New York found that Defendant took steps to conceal information from the Court and the Bankruptcy Trustee.  In particular, the Court found that Defendant "operated in bad faith"; "refuse[d] to testify or produce documents"; "inconsistent[ly]" invoked the Fifth Amendment in refusing to provide information; "refus[ed] to cooperate with the Trustee and [was] reticen[t] to make full disclosures to the Court"; and that Defendant's assurances to the Court were "not credible."  Case No. 13-bk-45519, ECF No. 188 attached as Exhibit F.

29.     In that same action, the Court issued a separate order requiring Defendant to turn over all of his electronic devices for imaging after it found that Defendant "refused to obey" Court

Orders requiring to turn over information to the bankruptcy trustee and held Defendant's actions were "improper and unjustified." *Id.* at ECF No. 260, attached as Exhibit G.

 30. Most recently, on December 2, 2020, the United States filed a criminal indictment against Defendant for concealing revenue from the Internal Revenue Service, in part by using nominee bank accounts and check cashing stores to hide revenue from the United States Government and avoid paying taxes. *See* Case No. 1:20-cr-00551-MKB, ECF No. 1, attached as Exhibit H.

 31. Notably, Defendant is a law school graduate who was a member of the State of New York bar until he was disbarred in 1990 after being convicted of two counts of conspiracy to commit murder for attempting to arrange the murder of his sister-in-law and her father in retaliation for the death of his brother. Exhibit I.

## IV. CLAIMS FOR RELIEF

### COUNT I – TORTIOUS INTERFERENCE

 32. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

 33. Plaintiff is the owner and beneficiary of the Policies.

 34. Defendant has known that Plaintiff is the owner and beneficiary of the Policies, and has had notice of the terms of the Policies.

 35. Defendant intentionally and unjustifiably interfered with Plaintiff's rights under the Policies by taking affirmative steps to conceal his mother's death in an effort to prevent the death benefits from being paid out for the Policies.

 36. As a result of Defendant's actions, Plaintiff has not received the death benefits under the Policies to which Plaintiff is entitled in its capacity as Securities Intermediary. As a

6

result of Defendant's actions, Plaintiff has been forced to continue paying premiums for the Policies notwithstanding the death of Mrs. Segal.

## COUNT II – DECLARATORY JUDGMENT

37. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201(a) because the controversy concerns the legal rights and obligations of the parties under the Policy and the issues raised are sufficiently definite and concrete as to allow a conclusive judgment.

39. An actual controversy has arisen and a real dispute exists with respect to the fact and date of death of Mrs. Segal.

40. Declaratory relief is necessary because Plaintiff, in its capacity as Securities Intermediary, will suffer hardship if judicial consideration is withheld. Among other things, Plaintiff has not received the death benefits it is owed under the Policies and will be forced to continue to pay premiums on the Policies even though its duty to pay premiums ceases upon Mrs. Segal's death.

41. Plaintiff therefore seeks a declaration that Lilly Segal passed away on June 15, 2019.

## VI. JURY DEMAND

42. Plaintiff demands a jury trial.

**WHEREFORE** Plaintiff respectfully requests the Court to enter judgment in its favor, against Defendant, for (1) all damages suffered as a result of Defendant's unlawful actions, which could exceed $19,000,000.00, (2) prejudgment interest, (3) attorneys' fees and costs and expenses associated with this litigation, and (4) every other relief the Court deems just and proper under

7

the law.  Plaintiff also respectfully request a judgment declaring that Mrs. Segal passed away and the date of Mrs. Segal's death.

Dated: March 23, 2021                              Respectfully submitted,

                                                  **HOLLAND & KNIGHT LLP**

                                                  By: */s/ Katherine A. Skeele*
                                                  Katherine A. Skeele
                                                  31 West 52nd Street
                                                  New York, New York 10019
                                                  Email: katherine.skeele@hklaw.com

                                                  and

                                                  *Pro Hac Vice Applications to Be Filed*
                                                  Jesus E. Cuza
                                                      Florida Bar No. 428991
                                                  Rebecca Canamero
                                                      Florida Bar No: 86424
                                                  HOLLAND & KNIGHT LLP
                                                  701 Brickell Avenue, Suite 3300
                                                  Miami, Florida 33131
                                                  Email:  jesus.cuza@hklaw.com
                                                               rebecca.canamero@hklaw.com

8

# Proposed Judgment

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, N.A.,<br><br>                              Plaintiff,<br><br>   - against -<br><br>HERMAN SEGAL,<br><br>                              Defendant. | Case 1:21-cv-01540-PKC-VMS |

### [PROPOSED] JUDGMENT

**WHEREAS** on March 23, 2021, Plaintiff Wilmington Trust, N.A. ("Securities Intermediary") filed a Complaint in the above-captioned action alleging tortious interference by Defendant Herman Segal ("Defendant"), and seeking a declaratory judgment relating to the death of Lilly Segal; and

**WHEREAS** a summons and Complaint having been duly served on Defendant, and Defendant having failed to plead or otherwise defend in this action, and said default having been duly noted, and upon the annexed declaration in support of default judgment; and

**WHEREAS** Defendant is subject to the jurisdiction of this Court; and

**WHEREAS**, the Clerk of this Court made an entry of default against Defendant; and

**WHEREAS**, a Notice of Motion for Default Judgment and the Declaration of Katherine Skeele in Support of the Motion for Default Judgment, having been served on Defendant via mail to his last known address on March 1, 2022; and

**WHEREAS** Defendant not having opposed the motions, and the time for opposing having expired; and the Court having examined the submissions of Securities Intermediary, and concluded that Securities Intermediary is entitled to (1) judgment against Defendant on Securities

Intermediary's tortious interference claim and (2) a declaratory judgment as a matter of law pursuant to Fed. R. Civ. P. 55(b)(2), Local Civil Rule 55.2(b), and 28 U.S.C. § 2201, it is hereby:

**ORDERED AND ADJUDGED** that:

1. Lilly Segal, Defendant's mother (whose name was legally changed to Sprinta Berger shortly before her death), passed away on November 7, 2018 and was buried on November 7, 2018 in Beth David Cemetery in Brooklyn, New York next to the grave sites of her deceased son and husband;

2. Defendant took deliberate actions to conceal his mother's death, including providing false identifying information on both her death certificate and in the form he used to facilitate a name change for his mother prior to her death;

3. As a result of Defendant's actions, the identifying information (i.e., the social security number and birthdate) contained on the death certificate of Sprinta Berger (aka Lilly Segal) is incorrect.

**ORDERED AND ADJUDGED** that Securities Intermediary is entitled to judgment against Defendant on its tortious interference claim in an amount of $19 million; and

**ORDERED AND ADJUDGED** that post-judgment interest shall run on the above amount at the applicable rate pursuant to 28 U.S.C. § 1961 from the date of judgment until the judgment is satisfied; and it is further

**ORDERED AND ADJUDGED** that this Court retains jurisdiction over the parties hereto and action to enforce this judgment.

Dated: \_\_\_\_ \_\_\_, 2022

_____
Pamela K. Chen, U.S.D.J