# Holland & Knight

701 Brickell Avenue, Suite 3300 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Jesús E. Cuza
305 789 7513
jesus.cuza@hklaw.com

September 12, 2022

*Via ECF*

Honorable Taryn A. Merkl
United States Magistrate Judge for the Eastern
District of New York
225 Cadman Plaza E Rm 317N
Brooklyn, NY 11201

Re:     *Wilmington Trust, N.A. as Securities Intermediary v. Segal* Civil Action No. 1:21-cv-
         01540 (*Letter pursuant to Court's August 25, 2022*)

Dear Judge Merkl:

We write this letter pursuant to the Court's directive on August 25, 2022, to address how Wilmington Trust, N.A. as securities intermediary ("Securities Intermediary" or "Plaintiff")[1] would like to proceed following the appearance of Defendant Herman Segal ("Segal" or "Defendant") in this matter.   While the Court is undoubtedly familiar with the procedural background and underlying facts of this case, we briefly summarize them below for context. We then explain how Securities Intermediary believes the Court should proceed in light of Segal's August 22, 2022 appearance in this action.

- *Summary of Procedural Background*

Securities Intermediary initiated this case more than one year ago when it filed the initial Complaint on March 23, 2021. ECF 1.  Securities Intermediary, on behalf of its customer, is the beneficiary of two life insurance policies—together, worth $19 million—insuring the life of Segal's mother, Lilly Segal. *See id.*  At the time Securities Intermediary filed the Complaint, it attempted service of process on Segal, through a process server, at the address reflected on his voter registration and Department of Motor Vehicles records. *See* ECF 6.  After multiple attempts at service proved unsuccessful, Securities Intermediary learned that his wife and son had registered a new address of 1535 East 17th Street, Apt 4R, Brooklyn, New York. *See id.*  Thus, Securities Intermediary, again through a process server, made several attempts to effect service at this East 17th Street address. *See id.*  The process server noted that the buzzer at 1535 East 17th Street, Apt 4R lists an "H. Segal," suggesting Segal in fact lived there. *See id.*  Securities Intermediary

---

[1] At all times, Wilmington Trust, N.A., a Delaware statutory Trust, acts solely as Securities Intermediary for the benefit of Geronta Funding and does not act in its individual capacity.  *See, e.g.,* N.Y. U.C.C. § 8-102(a)(14)(ii).

313394415.1

ultimately effected service on May 24, 2021 by affixing the Summons and Complaint to the door of that address *and* sending the Complaint by certified mail to that address. *See* ECF 5.

In addition to serving the Complaint, Securities Intermediary identified counsel for Segal in a criminal matter pending before this Court, in which Defendant is charged with felony tax evasion. *See United States v. Herman Segal*, E.D.N.Y. Case No. 1:20-cr-00551-MKB-1. In or about May 2021, Securities Intermediary's counsel sent Segal's criminal counsel, Mr. Mahon, a copy of the Complaint in this action, and Mr. Mahon confirmed that he sent it to his client. *See* ECF No. 6, ¶¶ 11-13.[2]

In the months following service of the original Complaint, Securities Intermediary sent copies of several case-related documents, including third-party subpoenas and status reports filed with the Court, by certified mail to Segal at the East 17th Street address. Securities Intermediary also sent copies of the Clerk's Certificate of Default, entered on February 10, 2022, to the East 17th Street address by certified mail (*see* ECF 16).

On May 26, 2022, Securities Intermediary filed an Amended Complaint. ECF 23. The Amended Complaint was mailed to the East 17th Street address, as well as to the 4114 Quentin Road address that remained registered for Segal in an abundance of caution. *See* ECF 24. Segal failed to answer the Amended Complaint, as a result of which the Clerk entered a second Certificate of Default on July 6, 2022. Securities Intermediary thereafter filed a Motion for Default Judgment. *See* ECF 27.

In response to the Motion for Default Judgment, the Court issued an Order giving Segal "one final chance to respond to Plaintiff's allegations." *See* ECF 32. *The Order was mailed to the same two addresses as the Amended Complaint: the East 17th Street address and the Quentin Road address.* Despite claiming he had not received any other documents that were mailed to or posted at the East 17th Street address, Segal admitted receiving the Order and submitted a pro se email response to the Amended Complaint on August 22, 2022 (the "Email Response").

Importantly, in his Email Response, Segal admits that since the end of August 2020, he has resided at the East 17th Street address. In other words, Segal admits that *at the time service of the original Complaint was effected at the East 17th Street address in May 2021*, he already resided at that address. Segal also admits that he resided at the East 17th Street address at the time the Amended Complaint was mailed to that address on May 31, 2022. *See* ECF 24. Moreover, Segal acknowledges he knew of this action before he filed his Email Response because he received "a notice from the [C]ourt of [a] April 28, 2022 hearing." But he admits he did nothing after receiving that notice, giving no regard to a lawsuit that had been pending against him since 2021 and that raised serious allegations concerning concealment of his mother's death for his financial gain. Only now, a year and half later, does Segal request an opportunity "to be heard."

- *Summary of Underlying Facts*

---

[2] This fact alone shows that Segal's statements in his Response Email are false because he did in fact receive the original Complaint and was thus aware of the case early on, in or about May 2021.

313394415.1

When Lilly Segal died in 2018, Securities Intermediary became entitled to the $19 million in death benefits under the two policies it owned on behalf of its customer. *See* ECF 30, p. 4. However, Securities Intermediary has been unable to collect those death benefits because Segal intentionally obfuscated the fact of his mother's death. *See id.*, p. 5-9 (internal citations omitted). For example, a year before Lilly Segal died, Segal took steps to change his mother's name to "Sprinta Berger" (which had been her mother's name). *See id.* When Lilly died, Segal had her death certificate issued under "Sprinta Berger" and also had her buried under this name. *See id.* To further obscure her death and attempt to distinguish Lilly Segal from Sprinta Berger, Segal provided an incorrect social security number and birthdate on his mother's death certificate. *See id.* After intentionally creating confusion about the fact of his mother's death, Segal solicited money from the owners of life insurance policies on his mother's death in exchange for promises of information regarding his mother's passing and the death certificate.

Segal's actions have tortiously interfered with Securities Intermediary's contractual right to collect the $19 million in death benefits from John Hancock. Indeed, despite that Securities Intermediary provided John Hancock with indisputable proof of Lilly Segal's death, John Hancock has not complied with its obligation to pay the death benefits because of the confusion Segal created with the death certificate evidencing his mother's death. Segal's tortious interference has caused Securities Intermediary, on behalf of its customer Geronta Funding, to suffer significant damages. *See id.*, p. 16 (internal citations omitted).

- *Securities Intermediary's Position on How to Proceed in Light of Segal's "Appearance"*

Securities Intermediary submits that default judgment is appropriate in this case for the reasons discussed in its Memorandum of Law in Support of Motion for Default Judgment (the "Memorandum") and because Segal's Email Response does not offer any legitimate or credible justification for having failed to appear before now. As shown in its Memorandum (ECF 30, p. 12-13), Securities Intermediary has satisfied the procedural requirements for the entry of default judgment.[3] As previously discussed, Segal was served with process at the address where he admittedly resides and where he admittedly received the Court's Order affording him "one final chance" to respond. In addition, Securities Intermediary complied with the local rule requirements for obtaining default judgment. *See id.*. The substantive criteria for entry of default judgment also exist here. *See id.*, p. 14-23. First, it is apparent that Segal's default was willful—in fact, he admits he knew about the case when he received notice of the April 28th hearing but that he "did not respond." *See* Email Response. As an attorney himself, Segal knew precisely how to obtain more information about the case and—as his Email Response shows—how to respond to the allegations against him. But he deliberately ignored the lawsuit. Second, Securities Intermediary has been prejudiced by Segal's undue delay, and will continue to be prejudiced without the entry of default judgment, because it cannot collect the death benefits to which it is entitled without a declaration that Lilly Segal is Sprinta Berger and that Lilly Segal passed away. *See* ECF 30, p. 18-19. Finally, Segal does not have a meritorious defense to the declaratory relief sought. To the contrary, as

---

[3] In the interest of brevity and to avoid repetition, we only briefly state the reasons why default judgment is appropriate here and ask the Court to consider the full reasons as discussed in the Memorandum.

313394415.1

shown below, Segal's Email Response actually *admits* certain facts that *establish* Securities Intermediary's entitlement to declaratory relief.

Notwithstanding that default judgment is warranted in this case, Securities Intermediary recognizes that the Second Circuit disfavors default judgments and prefers for disputes to be resolved on the merits to the extent possible. *See, e.g., New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). In light of the Second Circuit's preference, Securities Intermediary will not pursue default judgment on the factual and legal issues that are now contested as a result of Segal's response to the Amended Complaint.[4] However, in his Email Response, Segal has *admitted* certain facts that conclusively establish Securities Intermediary's entitlement to partial judgment on certain declarations sought in Count II of the Amended Complaint for declaratory relief. Based on these admissions, Securities Intermediary requests that the Court enter partial judgment on Count II. Partial judgment as to the admitted and uncontested facts will expedite resolution of this case and will narrow and simplify the issues that remain to be adjudicated—which is in all parties' best interest and will conserve judicial resources. *See* Fed. R. Civ. P. 1 (directing courts and parties to "construe[ ], administer[ ], and employ[ ]" the Civil Rules so as "to secure the just, speedy, and inexpensive determination of every action and proceeding").

Specifically, Segal's Email Response admits the following facts:

1. **Lilly Segal's name was changed to Sprinta Berger.**
   *See* Email Response at 2 ("Plaintiff alleges that I changed a few digits of my mother's social Security #, and changed her birthdate *when she did the name change*.") (emphasis added); *id*. at 4 ("In actuality, 1/14/24 was her real birthday, and that's why…*it was on her name change*….") (emphasis added).

2. **Lilly Segal (a.k.a. Sprinta Berger) died on November 7, 2018.** *See* Email Response at 3 ("Lilly Segal died on November 7, 2018…").

3. **The Death Certificate incorrectly lists Lilly's Segal's/Sprinta Berger's social security number because two numbers were transposed. The correct social security number that should have been on the Death Certificate for Sprinta Berger IS XXX-XX-5372, listed in its entirety on Sprinta Berger's social security card, which is filed under seal herein at ECF 19-2.[5]** *See* Email Response at 2 ("If I wanted to 'obfuscate' anything, why would I just change her Social Security # by transposing 2 digits? …Isn't it more plausible that the Social Security # was an honest mistake?")

A partial judgment as to these three uncontested and admitted facts will facilitate Securities Intermediary's efforts to collect the death benefits to which it is entitled, thereby potentially

---

[4] Securities Intermediary acknowledges that Segal's Email Response disputes the factual allegations underlying Count I for tortious interference.

[5] The full, incorrect social security number that Segal erroneously stated on the Death Certificate of Lilly Segal/Sprinta Berger is filed under seal at ECF 31, p. 7 fn 3.

313394415.1

mitigating (and possibly even eliminating) the damages suffered as a result of Segal's actions.  At bottom, and consistent with Federal Rule of Civil Procedure 1, Securities Intermediary wishes to resolve this matter as expeditiously and efficiently as possible and to simplify the issues that remain to be adjudicated, which will also benefit Segal.  Thus, Securities Intermediary requests that Your Honor issue a report and recommendation that partial judgment be entered on its claim for declaratory judgment under Count II of the Amended Complaint.[6]

If, however, the Court is not inclined to issue partial judgment on the uncontested facts at this time, Securities Intermediary asks that the Court issue an expedited schedule within which to resolve those facts (and any other facts for which there is no genuine dispute) on summary judgment.

In sum, Securities Intermediary wishes to proceed in a manner that (1) is consistent with the law, and  (2) best serve the interests of justice, while (3) also preventing unnecessary delay and further prejudice to Securities Intermediary and the customer on behalf of which it acts as to facts on which there is no dispute, so that Securities Intermediary may proceed to attempt to minimize its damages on behalf of its customer.

Sincerely yours,

HOLLAND AND KNIGHT LLP

*Jesus E. Cuza*

Jesus E. Cuza


c:      All attorneys of record via NYSCEF
        Non-Appearing Defendant Herman Segal, by mail

---

[6] Securities Intermediary has attached to this letter a proposed partial judgment on Count II of the Amended Complaint (limited to the three uncontested facts) for the Court's consideration and further discussion at the hearing.

313394415.1