# Exhibit 1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
                                      )
3     WILMINGTON TRUST, N.A.,          )    1:21-cv-01540-PKC-TAM
                                      )
4                     Plaintiff,      )    Brooklyn, NY
                                      )    June 12, 2023
5                     vs.             )    2:03 PM
                                      )
6     HERMAN SEGAL,                    )
                                      )
7                     Defendant.      )

8
                     TRANSCRIPT OF STATUS CONFERENCE
9              BEFORE THE HONORABLE TARYN A. MERKL
                  UNITED STATES MAGISTRATE JUDGE
10
      APPEARANCES (All present by video or telephone):
11
      For the Plaintiff:          JESUS E. CUZA, ESQ.
12                                HOLLAND & KNIGHT LLP
                                  701 Brickell Avenue
13                                Suite 3300
                                  Miami, FL 33131
14
      For the Defendant:          Herman Segal, Pro Se
15
      ECR OPERATOR:               No name provided
16

17                            Terry Hodges
                               eScribers
18                        7227 North 16th Street
                           Phoenix, AZ 85020
19                         www.escribers.net

20    Proceedings recorded by electronic sound recording; transcript
      produced by transcription service.
21

22

23

24

25



Colloquy

```
 1              THE COURT:  Good afternoon.  Ms. Kenn (ph), could you
 2       call the case, please?
 3              THE CLERK:  This is civil cause for a status
 4       conference, docket 21-cv-1540, Wilmington Trust, N.A. v. Segal.
 5              Before asking the parties to state their appearance, I
 6       would like to note the following.  Persons granted remote
 7       access to proceedings are reminded of the general prohibition
 8       against photographing, recording, and rebroadcasting of court
 9       proceedings.  Violation of these prohibitions may result in
10       sanctions, including removal of court-issued media credentials,
11       restricted entry to future hearings, denial of entry to future
12       hearings, or any other sanctions deemed necessary by the Court.
13              Will the parties please state their appearances for
14       the record, starting with the plaintiff?
15              MR. JESUS CUZA:  Afternoon, Your Honor.  Jesus Cuza on
16       behalf of the plaintiff, from Holland & Knight.
17              MR. HERMAN SEGAL:  Herman Segal, pro se defendant.
18              THE COURT:  Good afternoon to you both.
19              So Mr. Cuza, we've been having these conferences every
20       couple of months or so, hoping to get some resolution to this
21       case.  Where are we?
22              MR. CUZA:  Your Honor, let me start with the end in
23       mind.  It's our goal to bring this to closure by no later than
24       the first week of September.
25              THE COURT:  I'm sorry, sir, you're breaking up a
```

Colloquy

1   little bit.  I couldn't hear you.  You said you were trying to

2   bring it to closure by no later than when?

3          MR. CUZA:  The first week of September.  (Audio

4   interference) that's what we're looking (audio interference).

5   When I'm talking about this, I'm talking about (audio

6   interference).  Let me tell you, Your Honor, we're --

7          THE COURT:  Mr. Cuza, Mr. Cuza, I don't know what

8   phone you're on.  But there's a lot of interference, and it's

9   cutting off your words.  In the meantime, Mr. Segal, if you

10  could go on mute to reduce any extra noise, that might help me

11  hear Mr. Cuza.  But I cannot understand you, sir.

12         MR. CUZA:  Your Honor, I'm going to call from another

13  phone.

14         THE COURT:  Okay.

15         AUTOMATED VOICE:  Goodbye.

16         THE COURT:  You still there, Mr. Segal?

17         MR. SEGAL:  Yes, I am.

18         THE COURT:  All right.  Just hang tight; he's going to

19  call back.  Thank you.

20     (Pause)

21         MR. CUZA:  Okay.  Your Honor, it's Jesus Cuza.  Is

22  this better?

23         THE COURT:  It is better.  There's still some

24  background noise, but it's definitely somewhat clearer.

25         MR. CUZA:  So Your Honor, what I was saying is that



Colloquy

1    our goal is to bring this case to closure by early September.

2    We deposed Mr. Segal.  He was scheduled to be deposed last

3    week.  He didn't make it.  I called him, and then he agreed to

4    come to our offices in New York today.  And he did show up

5    today.

6         Your Honor, he showed up with no documents.  That's an

7    issue that happened today.  I'm going to read the transcript.

8    And I think there's a way that I'm going to be able to work

9    with that.

10        In addition to that, Mr. Segal also refused to answer

11   questions with regards to his conversations with Hancock, and

12   in addition to that, refused to identify the identity of a

13   person that Mr. Segal mentioned has the custody of certain very

14   old documents, documents dating back to the 1940s and 1950s,

15   and that are very relevant to the case.

16        Your Honor, all this happened earlier today.  One of

17   the things that we're going to do is we're absolutely going to

18   have the meet-and-confer with Mr. Segal.  And then we're going

19   to come back to you immediately after we have the meet-and-

20   confer with Mr. Segal.

21        The only thing that we need to do, Your Honor, to

22   bring this thing to closing is resolve this issue.  And then

23   separately, I need the documents to be able to depose John

24   Hancock.  I absolutely believe, based on what I've seen, Your

25   Honor, that we absolutely have what we need to bring the case

Colloquy

1   to closure.

2          THE COURT:  Um-hum.  So --

3          MR. CUZA:  The tricky part is -- go ahead, Your Honor.

4          THE COURT:  You believe you have the documents?  But

5   you will be able to get specific evidence to get John Hancock

6   to resolve it?  Is that what you're saying?

7          MR. CUZA:  Your Honor, it is my belief that there's a

8   strong possibility that that will happen.  But again, there's

9   certain things that I need to pinpoint and focus on with

10  regards to the documents at issue.  Again, Your Honor, we're

11  talking about documents that date back to 1940s, 1950s.  These

12  are documents that are actually signed by Mr. Segal's mother.

13  These are everything from marriage certificates; these are

14  documents that were issued as a result of her coming to the

15  United States.  These are really document (sic) that clearly

16  are ancient, if you will, quote unquote, and quite reliable.

17         So Your Honor, basically, that's where we are.  Other

18  than what I'm telling you for the record, Your Honor, I don't

19  anticipate needing to do anything else.  There is a

20  possibility -- I don't think it's high -- that we might need to

21  join John Hancock as a party to the case.  One of the things

22  that we're trying to do is avoid that.  But the possibility is

23  there.  Again, like I just mentioned, I don't think it's high.

24         So that, Your Honor, kind of my summary of (audio

25  interference).

Colloquy

1      THE COURT:  Okay.  So do you have anything to add, Mr.

2    Segal?

3      MR. SEGAL:  Yes, I do.  First of all, Your Honor, I

4    don't recall the specific verbiage, but I recall Mr. Cuza

5    saying, prior to Hancock sending them sixteen million dollars,

6    that should Hancock decide to send them money, even if it's

7    a -- not the full amount but a substantial amount, that they

8    would remove me as a defendant, and they have not done so.

9      And secondly, I had sent documents to Mr. Cuza in a --

10    in a -- in an effort to perhaps negotiate some type of

11    settlement.  And he is now using these documents and attempting

12    to coerce me, and to coerce the Court to coerce me, to produce

13    these documents.

14      MR. CUZA:  Your Honor, would you like me to respond?

15      THE COURT:  Yes, please.

16      MR. CUZA:  Your Honor, our intent -- there's no

17    question, at this particular point in time, our clients have

18    not received the total amount of the death benefits because of

19    Mr. Segal's actions to obstruct the receipt of those funds.

20      But for Mr. Segal creating (audio interference) the

21    date of birth of his mother, my client would've received the

22    entire amount.  And had my client received the entire amount,

23    (audio interference) that it will not pursue further (audio

24    interference) against --

25      THE COURT:  Mr. Cuza, I don't know where you are, but



Colloquy

1    every fourth word is being interrupted by what sounds like

2    traffic.

3            MR. CUZA:  Judge, it's not me; I'm in a conference

4    room.  Mr. Segal, you're going to have to put it on mute.

5            MR. SEGAL:  My phone is on mute.  I'll do it again.

6    I'm muting again.

7            THE COURT:  Thank you.

8            MR. CUZA:  So Your Honor, where did I lose you?

9            THE COURT:  You said something about -- this is the

10   problem; it's like every fourth word.  You said something about

11   how your client would've received the full amount had Mr. Segal

12   not done something with regards to his mother's birthdate.  And

13   had your client received the entire amount, and then it cut out

14   again.

15           MR. CUZA:  So Your Honor, the only reason my client

16   hasn't received the entire amount of the death benefits is

17   because Mr. Segal's steps to obstruct the payment to my client,

18   of those entire death benefits due to my client.  And how is it

19   that he has obstructed the payment -- he has created this

20   confusion with regards to her date of birth.

21           Mr. Segal has continued to communicate with John

22   Hancock.  And that came out during today's deposition.

23   Although Mr. Segal did not want to share with us, or refused to

24   share with us, what it is that he specifically communicated

25   with John Hancock, during these communications that he had with

Colloquy

1    John Hancock, Your Honor, we're pretty certain that the emails

2    that Mr. Segal has generated to John Hancock are going to show

3    that it has to do with the issue of date of birth.  So there's

4    no question that my client has not received the death benefits

5    because of Mr. Segal's actions.

6          That notwithstanding, Your Honor, my client's intent

7    has not change.  My client's intent is to bring this to closure

8    as soon as possible; collect the entire amount of death

9    benefits.  And at that particular point in time, when my client

10   collects the entire amount of death benefits, my client is

11   absolutely intent, at this particular point in time, to waive

12   the claims that he -- that my client has against Mr. Segal.

13         So that is one topic that Mr. Segal raised.  The other

14   topic that Mr. Segal raised -- Your Honor, what Mr. Segal sent

15   to me, which I informed the Court before, during our prior

16   hearings, are documents that are very old, that actually show a

17   date of birth for his mother.  The date of birth, Your Honor,

18   was redacted.  But in the conversations that Mr. Segal and I

19   had, Mr. Segal represented to me -- and I believed him, with

20   regards to this particular statement -- Mr. Segal represented

21   to me, right, that the dates on these documents show that his

22   mother was born on 1926, which is the date that's shown in the

23   application for insurance.

24         These documents are crucial, Your Honor.  Because with

25   these documents, John Hancock does not have a reason to



Colloquy

1    actually deny the total payment claimed as a result of the

2    death benefits under the policy, Your Honor.

3           So that's my response to Mr. Segal's statement.  Your

4    Honor, if Your Honor would like me to cover another topic or to

5    expand more on what I just said, I'm happy to do that.

6           THE COURT:  No.  Thank you.  That's a helpful

7    overview.

8           So we were last here on May 2nd.  And at that point,

9    you did represent, Mr. Cuza, that you had been planning to take

10   Mr. Segal's deposition.

11          And I directed you, Mr. Segal, that you must respond

12   to plaintiff's discovery request and that you need to meet and

13   confer in good faith with regard to resolution of any dispute

14   that could come up during discovery.  You are correct, sir,

15   that Mr. Cuza has represented, for many months now, that should

16   his client be able to recover the death benefits, he would seek

17   to dismiss his claims against you.  But this has never been --

18   if he gets partial, that representation, Mr. Segal, was never

19   my understanding.  My understanding as of the last conference

20   was that John Hancock had paid a portion of the funds and that

21   the plaintiff, understandably, is seeking to get the balance of

22   the insurance payments.  And for that, he needed some

23   additional discovery due to some of the confusion that has been

24   created surrounding your mother's birthdate.

25          So I don't know what additional information you are



Colloquy

1    looking to get, Mr. Cuza.  But I do direct you both, including

2    you, Mr. Segal, to meet and confer, and try to resolve any

3    discovery disputes.  Mr. Cuza's client has brought an action

4    against you, as you know, because of your -- what they're

5    claiming is your interference with their ability to recover the

6    death benefits.  And you are required as a party in this case

7    to engage in discovery.  It may be things you don't feel like

8    sharing.  But that's what discovery is for.

9         So my hope is that the parties can work it out without

10   needing to come back to me to resolve any dispute that you may

11   have with regard to discovery.  But should that not be

12   possible, I have a specific procedure.  I ask the parties to

13   meet and confer, and if they can't work it out, write me a

14   joint letter, and we get the case on the calendar.  Sometimes I

15   have the parties come in; we have a hearing.  I look at the

16   documents, and I rule.

17        And that's how it's going to work, Mr. Segal, if the

18   discovery disputes cannot be resolved.  Does that make sense to

19   you, sir?

20        MR. SEGAL:  It does make sense to me.  But there are

21   various factors in play which -- I don't know whether Your

22   Honor would want to hear them now.  But those factors may

23   preclude Mr. Cuza from getting those documents.

24        THE COURT:  It's possible.  I'm not going to rule on

25   something or offer an opinion about something that I don't have

Colloquy

1    knowledge about; hasn't been fully briefed.  But if the

2    documents are relevant -- and relevance is broadly defined, Mr.

3    Segal -- it is very likely that they are discoverable in this

4    action, given the very narrow nature of the dispute here.

5           MR. SEGAL:  Well, there's a question of whose custody

6    or has control over them.  There's a question if they're still

7    in -- extant.  And there's also a Fifth Amendment issue, where

8    certain documents may incriminate me in certain other matters.

9    So there's some legal and practical justification why those

10   documents may not be available for production.

11          But I'm more than welcome for Your Honor to -- to

12   litigate or to argue, and to come to some judicial conclusion

13   in case Mr. Cuza and myself cannot come to an agreement over

14   them.

15          THE COURT:  I would just note, Mr. Segal, that the

16   Fifth Amendment protects individuals from giving compelled

17   speech that could incriminate them.  No --

18          MR. SEGAL:  I'm aware of the -- yes, Your Honor.

19          THE COURT:  -- person shall be forced to be a witness

20   against himself.  The Fifth Amendment rarely, very rarely,

21   protects parties from producing a document that is in their

22   possession.  You have to have a special kind of protection

23   called an active production issue.  And those are very rare.

24          MR. SEGAL:  I'm familiar with the -- with the laws,

25   Your Honor.  Thank you.  And this does come under that rare

Colloquy

1    exception.  And again, you know, it's up to Mr. Cuza if he

2    wishes to -- to, you know, try to compel me in -- judicially or

3    he wants to discuss with me.  I'm open to either suggestion.

4         THE COURT:  So Mr. Cuza, what do you propose, sir?  In

5    terms of next steps and timing?

6         MR. CUZA:  Your Honor, we're going to have -- my

7    intent is to reach out to Mr. Segal immediately after today's

8    hearing.  So it's our intent to have a meet-and-confer starting

9    today.  I'm ordering the transcript expedited.  So whatever we

10   can't accomplish today, it's my intent to reach out to Mr.

11   Segal immediately after I receive the transcript.

12        Your Honor, we will -- with the Court's permission, we

13   will file a letter advising the Court of the status of those

14   conversations.  And if we have to follow the -- we have to move

15   to compel Mr. Segal, we will.  And we will follow Your Honor's

16   order and instructions and procedures.

17        THE COURT:  All right.  Here's a question.  Is there a

18   confidentiality order in this case?

19        MR. CUZA:  Your Honor, I don't remember.  But I don't

20   think -- I don't remember working on one, either.

21        THE COURT:  Yeah, I don't think there is.  So that's

22   another option.

23        So Mr. Segal, I don't know if you've ever had one of

24   these happen in a civil case before.  But it is very common in

25   civil cases for parties to enter into what's called the

Colloquy

1    confidentiality stipulation, that can then be converted to a

2    court order.

3            And what can happen, if there's a confidentiality

4    order, is that parties can designate sensitive documents as

5    confidential.  And the party receiving them is typically only

6    permitted to use them in connection with the immediate case.

7    If you go to the Eastern District website, I have a model

8    confidentiality order on my area of the website.  It's a (audio

9    interference).  I don't know whose phone that is, but it's

10   extremely distracting.  So whoever's not muted, please mute.

11           The confidentiality order that's on the drive -- on

12   the Eastern District's website -- if it's of use to the parties

13   in this case, you're welcome to submit a proposed

14   confidentiality order.  And I'm prepared to, of course, sign

15   it.  And that could provide an extra layer of confidentiality

16   to the provision of documents that are marked confidential.

17           This is commonly used for documents that involve

18   personal identifying information and information that is

19   sensitive.  So that may also help to give you some comfort, Mr.

20   Segal, that the documents will be limited in their further

21   disclosures beyond Mr. Cuza.  Does that make sense?

22           MR. SEGAL:  It makes sense.  But unfortunately, we're

23   talking here about potential criminal possibilities, in which

24   case the confidentiality would not suffice, Your Honor.

25           THE COURT:  Mr. Cuza?



Colloquy

1        MR. CUZA:  Your Honor, number one, I disagree with Mr.

2   Segal's belief that he has a -- the type of criminal exposure

3   that he's alluding to, or criminal exposure with regards to the

4   documents that we are seeking to be produced.  So Your Honor,

5   until I have the conversation with Mr. Segal, there's not much

6   more that I can say with regards to that.

7        During the depo, he raised an objection.  Other than

8   raising the objection, and us covering what we needed to cover,

9   which he allowed us to cover, there's not much more that we

10  were able to do to advance on that particular issue, Your

11  Honor.

12       THE COURT:  I understand.  All right.  I understand

13  both sides' positions.  And I understand, to an extent, Mr.

14  Segal, what your concerns are.  But I also am of the view that

15  this is a very narrow question.  The question of which -- the

16  questions of custodian, and who had the documents when, none of

17  that matters.  If you have access to the documents now, and

18  they are relevant, you must turn them over if they are relevant

19  to the case and Mr. Cuza asks for them.

20       If you're claiming that you have some sort of active

21  production Fifth Amendment concern, I suppose that can be taken

22  up in due course.  But I also think there may be ways to help

23  mitigate that concern.  And I would need a lot more context, of

24  course, before I could make any type of a legally -- a

25  factually informed legal determination about the viability of

Colloquy

1   that argument.

2          There's so many questions that go into whether or not

3   there's a viable Fifth Amendment issue.  And it's not just a

4   matter of whether or not something's inconsistent with

5   something.  There's questions of timing; there's questions of

6   context.  So there's a lot that would need to be explicated,

7   probably at a hearing, to be honest.  I would need you under

8   oath, in the box, testifying, Mr. Segal, if I were to actually

9   be required to rule upon your Fifth Amendment claim.

10         So keep that in mind as well, Mr. Segal.  It's not a

11  threat; it's just a true statement that I could not rule on a

12  Fifth Amendment argument without hearing testimony as to the

13  basis for the assertion of the Fifth Amendment privilege, and a

14  lot of context establishing why you think it's pertinent,

15  salient, and within the statute of limitations.  That's another

16  important factor to think about.  So need a lot of context as

17  to why you think the disclosure of these documents could expose

18  you to criminal liability.

19         So with that, Mr. Segal, and Mr. Cuza, when should we

20  check in with you again?  I mean, you suggested writing a

21  letter, Mr. Cuza?  How many weeks until you'd like to submit an

22  updated report?

23         MR. CUZA:  Your Honor, I can send an updated report by

24  the end of the month.  And that's more than sufficient time to

25  address this issue.



Colloquy

1        THE COURT:  Mr. Segal?  Do you have time to confer

2   with Mr. Cuza in the next couple of weeks?

3        MR. SEGAL:  It's up to him.  I'm -- we're ready,

4   willing, and able, yes.  Yes, Your Honor.

5        THE COURT:  Okay.  Thank you.

6        So I would ask for a status report from the parties by

7   June 30th.  Please give me sort of a roadmap of the parties'

8   anticipated next steps.  If you do anticipate that there are

9   irretractably difficult discovery issues that I need to get

10   involved in, Mr. Cuza, please highlight that as well.  And if

11   it's type of thing where we just need to set it down for

12   briefing or hearing, you can inform me of that as well.  Okay?

13        MR. SEGAL:  Yes, Your -- yes, Your Honor.

14        THE COURT:  All right.  Anything else we should do

15   today, Mr. Cuza?

16        MR. CUZA:  No, Your Honor.  Thank you very much.

17        THE COURT:  Mr. Segal, anything else I can do today?

18        MR. SEGAL:  No.  Thank you so much, Your Honor.

19        THE COURT:  All right.  Well, thank you both.  Take

20   care, and stay safe.

21        MR. SEGAL:  You, too.

22        THE COURT:  Bye-bye.

23     (Proceedings concluded)

24                          *  *  *  *  *

25



1                   C E R T I F I C A T I O N

2

3            I, Terry Hodges, court-approved transcriber, do hereby

4   certify the foregoing is a true and correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9   _____            June 23, 2023

10  _____              _____

    Terry Hodges                                 DATE
11

12

    eScribers, LLC
13  7227 North 16th Street
    Phoenix, AZ 85020
14  www.escribers.net

15

16

17

18

19

20

21

22

23

24

25