

**Jaclyn M. Metzinger**

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Tel:  (212) 808-7843
Fax: (212) 808-7897

January 17, 2025

**By ECF**

Hon. Pamela K. Chen
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *Wilmington Trust, N.A. v. Segal and John Hancock Life Insurance Company of New York*, 21-cv-01540-PKC-TAM

Dear Judge Chen:

  We represent John Hancock Life Insurance Company of New York ("John Hancock") in the above-captioned case.  We write pursuant to Rule 2(B) of You Honor's Individual Rules and Practices to request a pre-motion conference regarding John Hancock's anticipated motion for summary judgment.

**I.**  **Background and Key Facts**

  This case involves two life insurance policies issued by John Hancock on the life of Ms. Lilly Segal, each providing for a death benefit of $9.5 million (the "Policies").  The Policies were originally owned by Ms. Segal's son, Herman Segal, but, after multiple transfers of ownership, are now owned by Plaintiff Wilmington Trust, N.A., as securities intermediary for Geronta Funding ("Plaintiff").

  The Policies were issued, and premium obligations were calculated, based on representations in the Policies' applications that Ms. Segal was born on March 26, 1926.  The accuracy of those representations is now in question, and substantial evidence has emerged demonstrating that Ms. Segal was actually born over two years earlier on January 14, 1924.  If Ms. Segal was two years older than originally represented, higher premiums would have been required to obtain and maintain the Policies.

  Both Policies have provisions to address misstatements of age in policy applications, and both Policies permit John Hancock to change the Base Face Amount to that which would have been purchased at the correct age.  In accordance with these provisions, after receiving proof of Ms. Segal's death and evidence reflecting a 1924 date of birth—including Ms. Segal's death certificate—John Hancock paid Plaintiff $16,943,803.47.  This amount represented the adjusted face amount of the Policies based on the 1924 date of birth, plus contractual interest.  However, Plaintiff alleges that an additional $2,943,168, plus interest, is owed based on the proffered 1926 date of birth.

  After over a year of discovery, John Hancock submits that Lilly Segal was born in 1924 and that no further payment is required under the Policies.

Honorable Pamela K. Chen
January 17, 2025

## II.     Lilly Segal's Birthdate Is January 14, 1924

Three critical pieces of evidence establish Lilly Segal's date of birth.  **First**, her death certificate states that she was born on January 14, 1924.  Notably, *Plaintiff* produced this death certificate in discovery, *Plaintiff* submitted it to John Hancock in support of its claim for the death benefits, and *Plaintiff* submitted it to this Court to establish its entitlement to the Policies' death benefits.  (ECF 72-1.)

**Second**, John Hancock has located a video recording of Lilly Segal herself stating that her birthdate was January 14, 1924.  This admission is dispositive.  On March 31, 2005, Ms. Segal was interviewed regarding her Holocaust experience, and a videotape of that interview is maintained at the Fortunoff Video Archive for Holocaust Studies at Yale University.  *See* Lilly S. Holocaust Testimony (HVT-4328), Fortunoff Video Archive for Holocaust Testimonies, Yale University Library (Mar. 31, 2005), available at https://collections.ushmm.org/search/catalog/hvt7113811.  This video recording was produced in this action as JHNY-00848.  In the interview, Ms. Segal stated that she was born on January 14, 1924.

The interview, which pre-dates the Policies, is reliable, the best evidence of Lilly Segal's birthdate, and is admissible under Federal Rule of Evidence 804(b)(4), which creates a hearsay exception for a deceased declarant's statement about her own date of birth.  *United States v. Mohamud*, No. 3:10-CR-00260, 2013 WL 1935506, at *6 (M.D. Tenn. May 9, 2013) (stating that testimony regarding one's age is admissible under Fed. R. Evid. 804(b)(4)(A)).  Alternatively, Federal Rule of Evidence 807 provides for an exception to the rule against hearsay where no other exception applies.  *U.S. v. Ulbricht*, 858 F.3d 71, 123 (2d Cir. 2017).  A hearsay statement may be admissible under Rule 807 if: "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."  *Id.* (citation omitted).  The Segal interview meets these elements.

Lilly Segal was interviewed by Holocaust historians before the Policies were issued, had no reason to misrepresent her birthdate, and her statements bear directly upon the material fact at issue in this litigation.  Critically, the interview is the most probative evidence addressing this crucial fact.  And there can be no question that Plaintiff was on notice of this video, as John Hancock produced the interview and transcript in its entirety on October 2, 2024.

**Third**, Herman Segal testified under oath that his mother's date of birth was January 14, 1924.  Given that Mr. Segal no longer has an interest in the Policies, he has no motivation to lie about his mother's date of birth.  *U.S. v. Palomares–Munoz*, No. 00–50216, 2001 WL 219951, at *1 (9th Cir. 2001) (statements of family members about family history are generally presumed to be truthful), citing Fed. R. Evid. 803(19) ("a reputation among a person's family . . . concerning the person's birth . . ." is not hearsay).[1]

---

[1]  Mr. Segal also testified that that the United States Social Security Administration ("SSA") confirmed Lilly Segal's 1924 date of birth following an administrative hearing.  John Hancock served a subpoena on the SSA to corroborate this testimony.  In response, the SSA responded that that Lilly Segal's "paper folder" has been destroyed in accordance with SSA rules and regulations and it had no record of any hearing.  The SSA further advised that it had conflicting records for Ms. Segal's date of birth—Lilly Segal's own SSA records suggest that she was born in 1926, but her husband's

Honorable Pamela K. Chen
January 17, 2025

### III. There Are Serious Validity and Admissibility Concerns Over the Evidence Upon Which Plaintiff Relies to Establish the 1926 Date of Birth

While Plaintiff has proffered a handful of documents suggesting that Lilly Segal was born in 1926, this evidence is fraudulent and/or unreliable, and is insufficient to rebut Ms. Segal's death certificate, her own statements about her date of birth, and Herman Segal's sworn testimony. Accordingly, Plaintiff will not be able to raise a *genuine* issue of fact regarding Ms. Segal's birthdate.

Earlier in this litigation, Plaintiff submitted to this Court a photocopy of a New York driver's license purporting to belong to Ms. Segal in support of the 1926 birthdate. (*See* ECF No. 72-1.) But Herman Segal testified that his mother did not drive, never had a driver's license, and that the picture and signature on this license do not belong to his mother. John Hancock subsequently attempted to authenticate this driver's license with the New York Department of Motor Vehicles ("DMV") and learned that the driver's license number reflected on the license belonged to someone else, and that the DMV has no records relating to Lilly Segal, corroborating Herman Segal's testimony.[2]

Plaintiff has also proffered various "ancient documents" in support of the 1926 birthdate. These "ancient documents"—which include Ms. Segal's Petition and Certification for/of Naturalization, a Registration of German Persecutees, and Ms. Segal's marriage record—do not create a genuine issue of fact. Not only are these documents classic hearsay, both the SSA and federal courts have recognized that Holocaust survivors often misrepresented their birthdates to help them survive in occupied Europe and the death camps and continued to use the incorrect birthdates after emigrating to the United States due to fear of deportation. *See* Social Security Ruling 81–16 in West's Social Security Reporting Service (1975–82); *Imber v. Schweiker*, No. 80-CV-186, 1984 WL 62856, at *1 (S.D.N.Y. Jan. 4, 1984); *Chan Wai King v. Sullivan*, 757 F. Supp. 179, 185 (E.D.N.Y. 1991); *Matusiak v. Finch*, 452 F.2d 223 (7th Cir. 1971). Herman Segal testified that this is exactly what happened here. He testified that his mother was a Holocaust survivor and changed her date of birth from January 14, 1924 to March 26, 1926 to appear younger while she was in a Displaced Person's camp in Germany because she understood that younger people were being prioritized to emigrate to the United States.

For the reasons set forth above, John Hancock respectfully requests a pre-motion conference to discuss its anticipated motion for summary judgment.

Respectfully submitted,

*/s/ Jaclyn M. Metzinger*
Jaclyn M. Metzinger
*Counsel for John Hancock Life Insurance Company of New York*

cc: Magistrate Taryn Merkl (via ECF)

---

records, where Lilly Segal was listed as a beneficiary and where she applied for spousal benefits, suggest that she was born in 1924.

[2] John Hancock produced this documentation to Plaintiff on October 2, 2024 and asked that Plaintiff correct the record with the Court. As of this filing, Plaintiff has failed to respond to John Hancock's letter or take steps to correct the record.