UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
WILMINGTON TRUST, N.A.,

                Plaintiff,

          - against -

HERMAN SEGAL and JOHN HANCOCK
LIFE INSURANCE COMPANY OF NEW
YORK,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-1540 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

Presently before the Court is Defendant John Hancock Life Insurance Company of New York's ("Defendant" or "John Hancock") motion *in limine*, filed on August 18, 2025. (Dkt. 114.) At issue are (1) two of Defendant's anticipated trial witnesses, and (2) certain ancient documents Plaintiff Wilmington Trust, N.A. ("Plaintiff" or "Wilmington Trust") seeks to introduce at the bench trial that began on September 9, 2025.[1] For the reasons explained below, Defendant's two challenged witnesses may testify at trial, and the Court reserves judgment until trial as to the admissibility of the challenged ancient documents.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case, and therefore recites only those facts necessary to explain the Court's decision on Defendant's motion *in limine*. This case relates to the payment of death benefits due on two life

---

[1] As discussed *infra*, trial in this matter has been bifurcated with respect to the claims against the two Defendants, with the claim against John Hancock being tried first. Defendant Herman Segal, therefore, is not participating as a party in the present trial, though Plaintiff expects to call him as a witness. (Joint Pre-Trial Order ("JPTO"), Dkt. 111, at 8.)

insurance policies (the "Policies") issued by John Hancock in 2008 to insure the life of Lilly Segal, who died in 2018. (Second Am. Compl. ("SAC"), Dkt. 72, ¶ 12.) Plaintiff Wilmington Trust is "the Securities Intermediary for the benefit of Geonta Funding, a Delaware statutory Trust," (*id.* ¶ 12 n.1), which acquired the Policies in 2016 and is now "the owner and beneficiary of the Policies," (*id.* ¶ 14). While John Hancock has paid Plaintiff $16,943,803.47 as death benefits for the Policies, Plaintiff claims it is still owed an additional $2,943,168.00 plus interest. (Joint Pre-Trial Order ("JPTO"), Dkt. 111, ¶ 5.)

In its defense, John Hancock claims that although the Policies "were issued based on representations in the policy applications stating that Lilly Segal was born in 1926," (*id.*), and premium obligations were calculated based on this 1926 birth year, (Def.'s 1/17/2025 Letter, Dkt. 102, at 1), Lilly Segal was actually born in 1924 and that John Hancock was therefore permitted, "pursuant to contractual provisions in the Policies and applicable New York law, [to] adjust[] the face amount owed based on [her] correct birthdate in 1924." (JPTO, Dkt. 111, ¶ 5 (citing N.Y. Ins. Law § 3203).) Thus, "John Hancock asserts that it has performed and satisfied all of its contractual obligations under the Policies at issue and that Plaintiff is not entitled to any additional payment under the Policies." (*Id.*)

The present bench trial seeks to resolve the question of when Lilly Segal was born and the total amount of death benefits due under the Policies.

## PROCEDURAL HISTORY

In May 2024, John Hancock was joined as a Defendant, (5/3/2024 Dkt. Order), and in January 2025, both Plaintiff and John Hancock requested a pre-motion conference ("PMC") to discuss their anticipated motions for summary judgment, (Dkts. 102–04). The Court held a PMC on March 21, 2025, after which Plaintiff and John Hancock consented to a bench trial solely to resolve Count II (against John Hancock) of the Second Amended Complaint. (3/21/2025 Min.

Entry; Dkt. 110.)  In Count II, "Plaintiff . . . seeks a declaration that" "John Hancock is obligated to pay the full death benefits, plus interest, under the Policy," and that "Lilly Segal was born on March 26, 1926."[2]  (SAC, Dkt. 72, ¶ 74.)  The parties filed their JPTO on August 8, 2025, John Hancock filed its motion *in limine* on August 25, 2025, and Plaintiff responded in opposition on August 25, 2025.  (Dkts. 111, 114, 115.)

## DISCUSSION

### I.     Plaintiff's Two Proffered Witnesses

Defendant first seeks to preclude the testimony of Plaintiff's anticipated witnesses June Munford and Michael Waas, whom Defendant characterizes as expert witnesses and who were untimely disclosed by Plaintiff.  (Def.'s Mot. *In Limine* ("MIL") Mem., Dkt. 114-1, at 1.)  According to their CVs, which Defendant submitted, by profession, Munford is a freelance "Researcher / Expert Witness" with a background in various positions in libraries, and Waas is law student with a background in genealogy.  (Def.'s MIL Ex. A, Dkt. 114-3 (Munford's CV); Def.'s MIL Ex. B, Dkt. 114-4 (Waas's CV).)  Plaintiff counters that neither will be serving as an expert witness, and both would be "called as witnesses *solely* for the purpose of authenticating certain ancient documents" that Plaintiff intends to offer at trial.  (*Id.* at 2–3.)  Plaintiff represents that:

> Mr. Waas and/or Ms. Munford will only be testifying regarding their personal knowledge as to the location of those ancient documents in archives where those documents would likely be.  Specifically, they will testify that the documents are located and accessible in either (a) the Arolsen Archives – International Center for Nazi persecution or (b) the National Archives and Records Administration.

---

[2] Count II also seeks declaratory relief as it relates to *pro se* Defendant Herman Segal, (SAC, Dkt. 72, ¶¶ 70–74), who is Lilly Segal's son, but, as previously discussed, the bench trial "will proceed against Defendant John Hancock only," (3/21/2025 Min. Entry).

3

(*Id*. (footnotes omitted).)[3] Notably, these documents were obtained by Defendant from the Arolsen Archives and the National Archives, and produced to Plaintiff by Defendant during discovery. (*Id.* at 2.)

Defendant argues that Waas and Munford's "credentials and lack of personal knowledge of the facts of this case make clear that they are in fact being offered as experts," that Munford "has offered expert witness services in dozens of lawsuits," and that Waas "was appointed as a scholar in residence at the New York Genealogical and Biographical Society." (Def.'s MIL Mem., Dkt. 114-1, at 2.) Plaintiff counters that their credentials are "only relevant to demonstrate that they are familiar with the archives at issue such that their confirmation as to the documents' existence in those archives is not called into question." (Pl.'s MIL Opp'n, Dkt. 115, at 5 n.10.)

Rule 901(b)(1) of the Federal Rules of Evidence allows evidence to be authenticated by the testimony of a witness with knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Furthermore, an ancient document may be authenticated with evidence that it (A) "is in a condition that creates no suspicion about its authenticity," (B) "was in a place where, if authentic, it would likely be," and (C) "is at least 20 years old when offered." Fed. R. Evid. 901(b)(8)(A–C). Munford and Waas, Plaintiff represents, will testify as to subsection (B), i.e. that, based on "their personal knowledge regarding the documents' location," (Pl.'s MIL Opp'n, Dkt. 115, at 5), the ancient documents were located "in a place where, if authentic, [they] would likely

---

[3] According to their websites, "[t]he Arolsen Archives is the international center on Nazi persecution that maintains the world's most comprehensive archive on the victims and survivors of National Socialism," *About Us: Profile*, Arolsen Archives, https://arolsen-archives.org/en/about-us/profile/ (last visited Aug. 27, 2025); and "[t]he National Archives and Records Administration . . . preserves U.S. government records, manages the Presidential Libraries system, and publishes laws, regulations, Presidential, and other public documents," *National Archives and Records Administration (NARA)*, USAGov, https://www.usa.gov/agencies/national-archives-and-records-administration (last visited Aug. 27, 2025).

be," Fed. R. Evid. 901(b)(8)(B). Expert witnesses are not the only witnesses who can accomplish this; as Defendant points out, "a lay witness is capable of" authenticating documents. (*See* Def.'s MIL Mem., Dkt. 114-1, at 4 (citing *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001))); *see also Martha Graham Sch. and Dance Found., Inc. v. Martha Gram Ctr. of Contemp. Dance, Inc.*, 380 F.3d 624, 643 (2d Cir. 2004) (finding that the district court had not erred during a bench trial by admitting ancient document letters when a non-expert "witness with relevant knowledge[] testified that the letters were what they purported to be" (citing Fed. R. Evid. 901(b)(1))).

Here, the Court finds that Munford's and Waas's testimony about where the alleged ancient documents were in fact located, i.e., in the Arolsen Archives and National Archives, is plainly not expert testimony and could be testified to by any layperson, e.g., a paralegal. However, their testimony about those two archives being "likely places" for those documents to be found is *not* "well known or commonly understood." *Mulder*, 273 F.3d at 101. For example, a paralegal who could testify about locating an ancient document in the Arolsen Archives or National Archives would *not* necessarily be qualified to testify about either archive being a "likely place" to find such documents. That sort of testimony requires the specialized knowledge of an expert, such as a research librarian or genealogist. Indeed, as Defendant contends, the fact that Munford and Waas have such credentials suggests that Plaintiff, too, believes this to be true. The Court therefore finds that a portion of Munford's and Waas's testimony constitutes expert opinion.

However, the Court finds that neither witness should be precluded from testifying at the upcoming trial. First, based on the credentials and experience of each witness, they are qualified to serve as experts on the issue of whether the two archives are likely places for the ancient documents at issue in this case to be found. Second, the belated disclosure of these witnesses as experts, given the circumstances of this litigation, does not warrant preclusion. As previously

5

noted, John Hancock was not added as a Defendant in this case until May 2024, over three years after the case was initiated. As Plaintiff points out, as a result, "*neither* party exchanged initial disclosures containing any proposed witnesses or discussed trial witnesses at any time prior to the filing of the Joint Pretrial Order. [Plaintiff] disclosed the identity of its witnesses precisely when it was first required to do so—*and at the same time that [Defendant] first disclosed its witnesses to [Plaintiff]*." (Pl.'s MIL Opp'n, Dkt. 115, at 4 (emphasis in original).)  While Rule 26 of the Federal Rules of Civil Procedure imposes affirmative obligations to disclose certain information, including the names of individuals "likely to have discoverable information" and the identities of experts who might be used at trial, *neither* side complied with those requirements in this case. Furthermore, having obtained and produced the ancient documents at issue, Defendant can hardly claim surprise or prejudice from Plaintiff seeking to call witnesses to establish the authenticity of those documents, especially when Defendant refuses to stipulate to authenticity and given that there does not appear to be any genuine dispute as to authenticity.  The Court therefore does not find that Plaintiff's failure to identify Munford and Waas as witnesses earlier or to provide expert disclosures regarding these two witnesses warrants preclusion of their testimony.

Defendant also argues that Munford and Waas cannot authenticate archival documents because they are not representatives or officers from the Arolsen Archives or the National Archives. (Def.'s MIL Mem., Dkt. 114-1, at 9.) Defendant relies on *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 580 (N.D. Ill. 2010), *aff'd* 747 F.3d 929 (7th Cir. 2014), where the district court found that "screen shots from the Internet Archive" can only be properly authenticated "by an officer or employee of the Internet Archive." 758 F. Supp. 2d at 580 (collecting cases specific to the Internet Archive). *Specht*, though, concerned an attempt to authenticate internet screenshots by "the creators of the sites assert[ing] from memory that the screenshots reflected how those sites

6

appeared in" the past. 747 F.3d at 933. As the Seventh Circuit pointed out while affirming the district court's evidentiary ruling, memory "is fallible," and authentication instead requires "someone with personal knowledge of the reliability of the archival service from which the screenshots were retrieved." *Id.* (citing *United States v. Bansal*, 663 F.3d 634, 667–68 (3d Cir. 2011)). While Defendant claims that Munford and Waas lack "any apparent first-hand knowledge of the documents in this case" and do not "serve as custodians of record where the documents were located," (Def.'s MIL Mem., Dkt. 114-1, at 4), Defendant does not claim that they lack personal knowledge of the ancient documents being located at the Arolsen Archives and the National Archives. *See* Fed. R. Evid. 901(b)(8) (providing that ancient documents can be authenticated with evidence, *inter alia*, that the document "was in a place where, if authentic, it would likely be"). The Court therefore does not find that the fact that Munford and Waas are not officers or employees of either archive precludes their testimony authenticating these documents.

Thus, the Court finds that Munford and Waas may testify at trial, both in a lay and expert capacity regarding where the ancient documents at issue were located and whether these locations are likely places for these documents to be found. And, of course, on cross-examination, Defendant will have the opportunity to challenge Munford's and Waas's personal knowledge and relevant expertise, which will go to the weight that their testimony deserves and whether their testimony is sufficient to authenticate the ancient documents at issue.

## II.    Admissibility of Plaintiff's Ancient Documents

Defendant also asks the Court to exclude certain ancient documents Plaintiff seeks to introduce at trial.[4] (Def.'s MIL Mem., Dkt. 114-1, at 7.) Defendant argues that they cannot be

---

[4] "These include Plaintiff's exhibits PX-A; PX-B; PX-C; PX-D; PX-E; PX-F; PX-G; PX-H; PX-I; PX-J; PX-N; PX-P; PX-Q; and PX-R." (Def.'s MIL Mem., Dkt. 114-1, at 7 n.2.)

7

authenticated. (*Id.* at 7, 10.) Some of these documents, as discussed in the previous section, originated from the Arolsen Archives and the National Archives, while others "were initially provided by" *pro se* Defendant Herman Segal, "who testified that he obtained the documents either from his son or from a storage unit in Brooklyn." (*Id.* at 8.)

Defendant presents several arguments in support of its claim that the challenged ancient documents should not be admitted. First, Defendant claims that the ancient documents found by Defendant Segal cannot be authenticated due to their "unknown original location." (*Id.* at 8.) As Plaintiff notes, though, courts have permitted family members to authenticate ancient documents found at their homes. (Pl.'s MIL Opp'n, Dkt. 115, at 9 (citing *United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 255 (S.D.N.Y. 2009)).) The Court cannot determine whether the ancient documents that Segal allegedly found are authentic without hearing his testimony. (JPTO, Dkt. 111, at 8 (representing that Segal will testify that the documents were found "in a storage unit" or given to him by his son, and were not found by Segal in his home)); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 643 F. Supp. 2d 471, 475 (S.D.N.Y. 2009) ("A district court will 'exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." (quoting *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006))). Accordingly, the Court "reserve[s] judgment until trial" on the admissibility of the ancient documents that originated with Defendant Segal "so that [Defendant's] motion is placed in the appropriate factual context." *Id.* (quoting *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002)).

Next, Defendant argues that chain of custody for the ancient documents in the Arolsen Archives' possession is not clear. (Def.'s MIL Mem., Dkt. 114-1, at 9.) First, "[e]stablishing a chain of custody is but one way of providing . . . authentication" under Rule 901 of the Federal

8

Rules of Evidence. *United States v. Thomas*, 54 F.3d 73, 83 (2d Cir. 1995). Second, "[b]reaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence." *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998). Thus, it is not necessary for Plaintiff to establish the chain of custody of these ancient documents in order to authenticate them. Defendant also argues that "numerous Arolsen Archive documents" (though it does not specify which) "contain widely varying birthdates for Lilly Segal" and thus should be rejected.[5] (Def.'s MIL Mem., Dkt. 114-1, at 9–10.) Again, these alleged discrepancies go to the weight to be given the documents, not their admissibility. The Court also reserves ruling until trial on the admissibility of the ancient documents that originated with the Arolsen Archives. *In re MTBE*, 643 F. Supp. 2d at 475.

## CONCLUSION

For the reasons explained above, the two challenged witnesses may testify at trial, and the Court reserves judgment until trial as to the admissibility of the challenged ancient documents.

---

[5] Defendant also focuses on the purportedly fraudulent driver's license for Lilly Segal, which Plaintiff filed on the docket in March 2022. (Dkt. 20-2.) While the Court notes that Defendant has presented persuasive grounds for its claim that the license is fraudulent, (Def.'s MIL Mem., Dkt. 114-1, at 8 n.3), and that Plaintiff has yet to explain the origins of this document, (JPTO, Dkt. 111, at 10), the Court questions the relevance of this document, which Plaintiff does not intend to introduce at trial. For the same reason, the Court questions the purpose and utility of of Defendant calling one of Plaintiff's trial counsel, Katherine Skeele, and an "[u]nidentified Holland & Knight [a]ttorney," to testify at trial regarding the allegedly fake driver's license. (JPTO, Dkt. 111, at 10.) Notably, however, despite objecting to these witnesses being called in the JPTO, Plaintiff has not moved *in limine* to preclude those examinations. Lastly, the Court notes that Defendant appears to have misgendered Attorney Skeele, whose Holland & Knight biography states that their pronouns are "they/them," *see Kate Skeele*, Holland & Knight, https://www.hklaw.com/en/professionals/s/skeele-katherine-a (last accessed Aug. 27, 2025), and so the Court reminds "[a]ll parties and counsel" of its instruction that they use correct pronouns when "address[ing] each other in all written documents and court proceedings," *see* the Court's Individual Rule 7.

                              SO ORDERED.

                              */s/ Pamela K. Chen*
                              Pamela K. Chen
                              United States District Judge

Dated: September 9, 2025
       Brooklyn, New York